IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 13, 2007 Session

# SHANETTE COLLIER CHANDLER v. KYLAN CHANDLER

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-006503-04      D'Army Bailey, Judge**

---

**No. W2006-00493-COA-R3-CV - Filed June 28, 2007**

---

This appeal arises from a custody dispute involving a minor child. The plaintiff mother filed a complaint for divorce against the defendant father. The parties entered into a marital dissolution agreement as to property and debt division, but they could not come to an agreement on custody for their three-year-old son. A trial was held on the custody and visitation issues. The trial court granted the divorce, named the mother the primary residential parent of the child, and gave the mother full decision-making authority for the child. The parenting plan adopted by the court allowed the father visitation on alternating weekends and holidays, and for four weeks each summer. The trial court awarded the mother the federal tax exemption for the child, as well as $1,500 in attorney's fees that she incurred litigating the custody issue. The father appeals the trial court's initial custody decision regarding visitation and decision-making, and the award to the mother of the federal tax exemption and attorney's fees. We affirm in part, and reverse in part.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part,
Reversed in Part**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Mitchell D. Moskovitz, Adam N. Cohen, Memphis, TN, for Appellant

Venita Marie Martin, Monica N. Wharton, Memphis, TN, for Appellee

## OPINION

### I. Facts and Procedural History

This appeal arises from a divorce and resulting custody dispute involving a minor child. On November 12, 2004, Shanette Collier Chandler ("Mother" or "Appellee") filed a complaint for divorce from Kylan Chandler ("Husband" or "Appellant"). Father countersued for divorce on December 16, 2004. Each party sought to be designated as the primary residential parent of the couple's minor child, Kennedy Chandler (born September 16, 2002). By consent order entered on December 17, 2004, Mother was to have temporary custody of the child, and Father was allowed visitation over the Christmas holiday and on alternating weekends.

On February 2, 2005, the trial court entered an order suspending proceedings so that the parties could attempt reconciliation, but this order was set aside on June 21, and the cause was reset on the Shelby County Circuit Court docket. Father filed a petition for custody and requested a hearing date, and Mother filed an answer and a motion in opposition. Mother filed a motion *pendente lite* seeking alimony, child support, and attorney's fees, and both parties filed affidavits of income and expenses. On July 22, 2005, after hearing from the parties' counsel, the trial court ordered that Mother retain temporary custody of the child, that the parties report to Dr. Gary Bayer for a psychological evaluation, and that the parties, accompanied by counsel, meet within two weeks of receiving Dr. Bayer's evaluation to determine if an agreement could be reached regarding custody.

On September 2, 2005 a hearing was held before a divorce referee on Mother's motion *pendente lite* for child support and spousal support. The referee found that Father's average monthly expenses were $4,262 and that he was substantially current on his obligations. The referee further found that Father had average, monthly self-employment income of $1,784 per month from Dollar Mortgage. Additionally, the referee found that Father had additional income in the amount of $2,500 from his parents, as well as imputed income of $1,000 per month from River City Barbecue, a restaurant which he at one time owned but transferred to his mother in February of 2005 after failing to pay back taxes. Based upon these figures, the total monthly income of Father was found to be $5,284, and Mother's monthly income was found to be $1,421. The referee also found that Father had paid Mother $900 in both August and September, and that Father was entitled to a credit of $1,800 against any arrears.[1] Relying upon the findings of the referee, the trial court ordered that Father pay $1,033 per month in temporary child support, and $1,000 per month in temporary spousal support and maintenance, both to be effective from July 1, 2005. The order was entered on

---

[1] Mother filed a petition for exclusive use of the marital residence in July of 2005, alleging that Father's physically abusive behavior toward her in June had led to the final separation. Apparently, the trial court denied this petition, but ordered Father to pay Mother $900 per month for rent in August and September, prior to the *pendente lite* hearing at which the child support and alimony amounts were adjusted. Despite Mother's testimony that Father had not voluntarily offered her support after the most recent separation, Father testified that, between the time of the final separation in June of 2005 and the court order for *pendente lite* support in September of 2005, he met wife at a Kroger grocery store on three occasions to provide her with some cash, "[r]oughly, 300 there, 200 here, 400 here."

September 19, 2005, and considering the findings of the divorce referee, the trial court awarded Mother $3,166 for Father's child support and spousal support arrears.

The parties entered into a marital dissolution agreement that was filed with the trial court on November 1, 2005. However, this agreement only represented the parties' resolution of property and debt division and other financial issues, as the parties were unable to reach an agreement regarding custody of Kennedy.

A trial was held on November 3 and 7, 2005 before the Honorable D'Army Bailey, to litigate the remaining issue of child custody. The trial court considered the psychological report submitted by Dr. Bayer and then heard testimony from Mother and Father. At trial, Mother testified that she had been the primary caretaker of Kennedy throughout the parties' marriage, and that when she was not working she stayed at home and took care of the child. She also claimed that she provided the majority of the support for the child during the separation, including his daycare expenses of $420 per month. Mother testified that she presently lived with the children[2] in an unfurnished apartment and that they slept on air mattresses because Father had not provided them with furniture or a bed from the marital residence. Father testified that after Mother left with the child in June of 2005, she had kept the child away from him for several weeks. Father testified that prior to the parties' initial separation, he had prepared the child for daycare in the mornings and picked him up in the afternoons after work. Father explained that he often engaged in recreational activities with the child, such as taking him to the park, Grizzlies games, and Kennedy's favorite restaurant, Chuck E. Cheese's. Additionally, Father testified that Mother was physically violent and had a criminal background. Both parties testified at length as to their attempts at reconciliation, and they also described several incidents involving physical confrontation throughout their marriage.

The trial court entered a decree on November 18, 2005, granting Mother an absolute divorce on the ground of irreconcilable differences. The court found that the marital dissolution agreement adequately provided for the equitable settlement of all property rights between the parties and ordered that it be incorporated by reference into the final decree of divorce. The court designated Mother as the primary residential parent and granted her full decision-making authority, finding it to be in the child's best interest. The court adopted by reference a permanent parenting plan which granted Father parenting time on alternating weekends from Fridays at 6:00 p.m. to Sunday at 6:00 p.m.(with a two-hour visitation period on alternating Wednesdays), on alternating holidays, and for four weeks during the summer. The parenting plan also awarded Mother the federal income tax exemption to claim the child as a dependent. Lastly, the trial court awarded Mother a $1,500 judgment for attorney's fees incurred as a result of the custody proceedings.

Father filed a motion to alter or amend the judgment in which he asked the trial court to increase his parenting time and award him the federal income tax exemption. This motion was denied by order on January 27, 2006. Father filed a timely notice of appeal to this Court.

---

[2] Mother also has a daughter from a previous relationship, who was twelve years old at the time of trial.

## II. Issues Presented

Father presents the following issues on appeal for our consideration:

1.  Whether the trial court erred in awarding Father visitation on alternating weekends and holidays and for four weeks during the summer, despite Dr. Bayer's recommendations regarding age appropriate visitation;
2.  Whether the trial court erred in granting Mother full decision-making authority as to the child, particularly with regard to decisions affecting the child's education and extracurricular activities;
3.  Whether the trial court erred by granting Mother the federal income tax exemption for the child;
4.  Whether the trial court erred by awarding Mother $1,500 in attorney's fees.

Mother's sole issue is whether she is entitled to a reasonable award of attorney's fees incurred as a result of this appeal.  We affirm in part, and reverse in part.

## III. Discussion

In a proceeding requiring the court to make a custody determination regarding a minor child, the determination is to be made upon the best interest of the child.  *See* Tenn. Code Ann. § 36-6-106(a) (2001).  Our Supreme Court has held that in such a case, "the needs of the child[] are paramount," and "every effort must be made to promote the child's interest by placing the child in an environment that will best serve his or her physical and emotional needs." ***Parker v. Parker***, 986 S.W.2d 557, 562 (Tenn. 1999) (citing ***Lentz v. Lentz***, 717 S.W.2d 876, 877 (Tenn. 1986); ***Luke v. Luke***, 651 S.W.2d 219, 221 (Tenn. 1983)).  The Legislature has set out relevant factors to be considered by a trial court when making a child custody determination.  *See* Tenn. Code Ann. § 36-6-106(a)(1)–(10) (2001).  The Tennessee Supreme Court has also expressed its view of relevant factors to be considered in this regard:

> the age, habits, mental and emotional make-up of the child and those parties competing for custody; the education and experience of those seeking to raise the child; their character and propensities as evidenced by their past conduct; the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; the availability and extent of third party support; the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.

***Parker***, 986 S.W.2d at 562.

When reviewing a trial court's decision regarding child custody, we examine the trial court's findings of fact *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise. ***Darvarmanesh v. Gharacholou***, No. M2004-00262-COA-R3-CV, 2005 Tenn. App. LEXIS 427, at *8-9 (Tenn. Ct. App. July 19, 2005) (citing Tenn. R. App. P. 13(d) (2003); ***Hass v. Knighton***, 676 S.W.2d 554, 555 (Tenn. Ct. App. 1984); ***Bah v. Bah***, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983)). "Absent some compelling reason otherwise, considerable weight must be given to the judgment of a trial court in a divorce proceedings in respect to the credibility of the parties and their suitability as custodians." ***Mimms v. Mimms***, 780 S.W.2d 739, 744 (Tenn. Ct. App. 1989). "In child custody cases, Appellate Courts give great weight to the decision of the Trial Judge who saw and heard the parties testify." ***Rubin v. Kirshner***, 948 S.W.2d 742, 746 (Tenn. Ct. App. 1997). "The trial courts are vested with a wide discretion in matters of child custody, and the reviewing courts will not interfere except upon a showing of erroneous exercise of that discretion." ***Mimms***, 780 S.W.2d at 745.

After hearing two days of testimony from Mother and Father, the trial court announced its findings and ruling from the bench as follows:

> Well, I've gone back over my notes from the last two days of testimony of Mr. Chandler and Ms. Chandler. And as I've already said, clearly, the relationship between these two adult parents had been involved and obviously stressful.
>
> As far as the child, the three-year-old child is concerned – and that's the issue that is presented to me in terms of what do I set up as far as parenting time. And it's clear to me from the testimony of the parties that however we try to post the realities to factor what efforts Mr. Chandler made to be with this child, what efforts he didn't when he was with his child and when he wasn't and why, the mother has continued to be for well over a year now, the – at least in times where they were not together, the one who's had this child with [sic] her.
>
> And I am, frankly, a bit surprised that by his own testimony, he's contributed so little financially to the support of this child. He said $300 one month, 200 another and 400 at another until, such time as the court order. And I really haven't heard any good reason about that. I understand that $900 is the alimony, and then apparently, there was some order of child support that was entered by the Court – by referee, I guess.
>
> I cannot overlook that the mother has been the one who's taken the child, apparently by the boot, regularly for health care while at the same time, the father has allowed the health insurance on the child to lapse. The mother has been struggling through this separation period with no furniture and sleeping on air mattresses.
>
> How do I as a judge try to again weigh the conflict and explanations about why – why she wasn't in the house and who

caused this altercation or who caused that. And I'm talking about the three year old.

It just seems to me that she's been the primary care giver, primary custodian. She testified she bought most of the – bought all the clothes. I think he gave some testimony about doing some clothes purchase.

She's got a daughter, a teenage daughter, or whatever age is, who's been there and who's on the honor role [sic], playing basketball, stepsister to this three year old.

She testified that she had a car, but [Mr. Chandler] turned it in to the lease. And I didn't hear any testimony from him about any effort to help her get some transportation to move his child around to day care. And she said that she's been getting the child to day care and paying the day care. I didn't hear him rebut that, that he was paying the day care, even.

It was almost snide the way Mr. Chandler said, well she knows how to call me when she wants some money, instead of him finding her to give some money. And she's got his three-year-old child.

Neither parent is claiming that the other parent is not loving of this child. Neither parent is claiming that either parent has put the child in danger; although, there was some testimony about Mr. Chandler getting ticketed about safety seat belt allegation, which he claims in his testimony.

And neither parent claims that the other parent has (inaudible) of the child. And I – and I don't believe that Ms. Chandler is – has any desire or intent to frustrate Mr. Chandler's visitation and interaction with this child.

So I think that I'm going to designate the mother, Ms. Chandler, as the primary residential parent. And of course, I think that the alternating weekend visitation that's already in place should continue. And if they – if there's some reason why that should be modified, then certainly I will address that.

But normally, we certainly allow for alternating major holidays, extended visitation. Of course, the child is not in school yet but certainly will be at some point. He's in day care. A year or so, he will be school aged. But I think that Mr. Chandler is entitled to and should get some periods of extended visitation with the three year old.

And I might add that it's also, I think, positive to allow for this stepchild, the 12 year old, ought to be able to have the [inaudible]– even thought they're different in ages. There's been no claim about any great emotional recreational detachment. But I think that that's a factor. It's not a significant determining factor.

-6-

So that's what my decision is. Now, you know, we can address any loose ends around that decision that you all feel I need to address.

The court's decision to name Mother the primary residential parent is reflected by court order dated November 18, 2005. Further provisions as to the respective rights of the parties were set forth in the parenting plan accompanying the trial court's order. In addition to Father's alternating weekend and holiday visitation, he was also granted a two-hour visitation period with the child on alternating Wednesdays, as well as four weeks of visitation during the summer. The authority to make major decisions as to the child's educational, non-emergency health care, religious, and extracurricular activities was given to Mother. Father was ordered to continue to pay monthly child support in the amount of $1,033. Father was also ordered to maintain health insurance for the child. Mother was awarded the dependency exemption for federal income tax purposes. Mother was also awarded $1,500 for her legal expenses incurred during the custody proceedings.

## A. Father's Visitation Rights

Father contends on appeal that the trial court's decision regarding his visitation rights, as set forth in the permanent parenting plan adopted by the court, are not in his son's best interest. At trial, Father requested that the trial court implement the recommendations of the court-appointed psychologist, Dr. Bayer, who had conducted evaluations of both parents, into the parenting plan. Father relies heavily on the following findings by Dr. Bayer in his report:

> 3. There is no data that clearly established the superiority of one parent over the other.
>
> 4. There is no clear data that would dictate one parent should have the majority of parenting with the child. Thus parenting time for each parent could be equal or near equal should the Court choose to do so.
>
> 5. Length of time away from one parent should be developmentally appropriate for the child, e.g. at three years old 3-4 days; at seven years old one week with each parent with a mid-week contact with the other parent; at ten years old one week with each parent.
>
> 6. The paternal access time should be increased; the father is only seeing the child every other weekend. Ten days is too long of a time span for a three-year-old child to be out of touch with a parent.
>
> 7. Given the father's superior academic achievement, he should have a greater input in to [sic] the child's academic future.

After trial, the court granted Father parenting time on alternate weekends from Fridays at 6:00 p.m. to Sunday at 6:00 p.m. (with a two-hour period on alternating Wednesdays), on alternating holidays, and for four weeks during the summer. Father now asserts that the court erred in determining that this visitation schedule was in the best interest of the child. Prior to trial of the custody and visitation issues, Father's counsel proposed a parenting plan to the trial court as follows:

> My client has a proposed parenting plan this morning, and he is proposing that he be designated as the primary residential parent. And based on Dr. Baer's [sic] recommendation that neither should have the majority of the parenting time, he's proposing that they divide the time equally. And that's what the dispute is, who should be the primary residential parent and how much time.
> I'm assuming that if my client's designated residential parent, she would probably want equal time. She's hoping to be designated primary residential client – parent and only give my client every other weekend, and that's just the essence of where the dispute is.

"An order of the trial court making a determination of custody, either the initial determination or a modification thereof, is a finding of fact that the best interests of the chid are served by that court order." JANET L. RICHARDS, RICHARDS ON TENNESSEE FAMILY LAW, § 8-8(a) (2d ed. 2004). In *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001), our Supreme Court stressed that a trial court's decision on visitation will not ordinarily be reversed absent some abuse of discretion, and that when an appellate court reviews the trial court's visitation order for an abuse of discretion, the child's welfare is to be given paramount consideration. The Court further elaborated:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge*, 42 S.W.3d at 85. The Middle Section of this Court, in *Shofner v. Shofner*, 181 S.W.3d 703, 716 (Tenn. Ct. App. 2004), stated:

> Trial courts have broad discretion to fashion parenting plans that best serve the interests of the children. Tenn.Code Ann. §

36-6-101(a)(2)(A) (Supp.2004). They must, however, base their decisions on the evidence presented to them and upon the proper application of the relevant principles of law. *D v. K*, 917 S.W.2d 682, 685 (Tenn.Ct.App.1995). While we are reluctant to second-guess a trial court's decisions regarding a parenting plan, *see Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn.Ct.App.1997), we will not hesitate to do so if we conclude that the trial court's decision is not supported by the evidence, that the trial court's decision rests on an error of law, or that the child's interests will be best served by another parenting arrangement. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001); *Steen v. Steen*, 61 S.W.3d at 328; *Placencia v. Placencia*, 3 S.W.3d 497, 499 (Tenn.Ct.App.1999).

"If the child's time is spent equally or almost equally between both parents' homes, they are said to have joint physical custody." JANET L. RICHARDS, RICHARDS ON TENNESSEE FAMILY LAW, § 8-2(b) (2d ed. 2004). To the extent that Father alleges error with the trial court's decision not to award him joint custody of the child, we find his argument unpersuasive. The Legislature "does not forbid a court of this state from awarding the parties joint custody of a minor child in appropriate circumstances." *Darvarmanesh*, 2005 Tenn. App. LEXIS at *20 (citing Tenn. Code Ann. § 36-6-101(a)(1) (2003)). "However, while authorized by statute, joint custody arrangements are generally disfavored by the courts of this state due to the realization that such rarely serves the best interest of the child." *Id.* at *21 (citations omitted). "[I]n order for a joint custody arrangement to serve the best interest of the child, it requires a 'harmonious and cooperative relationship between both parents.'" *Id.* (citing *Dodd v. Dodd*, 737 S.W.2d 286, 290 (Tenn. Ct. App. 1987)). As stated by this Court in *In re M.J.H.*, 196 S.W.3d 731, 747 (Tenn. Ct. App. 2005):

> We have in the past emphasized that a "cooperative spirit" between the parties, or at least an ability to amicably resolve child-rearing disputes, is "essential to a joint custody arrangement." *Jahn v. Jahn*, 932 S.W.2d 939, 942 (Tenn. Ct. App. 1996). The chance that a joint custody arrangement will succeed "diminishes when the parents have turned child-raising into a battleground." *Swett v. Swett*, 2002 Tenn. App. LEXIS 456, No. M1998-00961-COA-R3-CV, 2002 WL 1389614, at *6 (Tenn. Ct. App. June 27, 2002).

The record is replete with testimonial accounts, by both parties, of altercations between Mother and Father at various points throughout approximately four years of marriage. For example, the parties both described one incident in which Ms. Chandler struck Mr. Chandler with a pool stick at their residence. Ms. Chandler testified that her physical outbursts were always in response to some provocation by Mr. Chandler. Mr. Chandler obtained an order of protection from Ms. Chandler in November of 2004, which he eventually dropped when the parties attempted reconciliation. Both parties testified that they had experienced multiple confrontations resulting in the police being called, with a result of either Mr. Chandler or Ms. Chandler being asked to

temporarily leave the marital home. The parties also testified that some of their more recent disputes were related to Father's ownership of a barbeque restaurant since 2001, for which he claimed to owe a substantial amount in back taxes and which he allegedly transferred to his mother in February of 2005.

The parties attempted reconciliation several times between 2003 and 2005, but were ultimately unable to set aside their differences. Mother testified that the child had been going to daycare since July of 2004, for which she made monthly payments of $420. Mother testified that she often relied upon her sister and mother for help and that she worked at the Peabody Hotel in order to make enough money to care for the child's basic needs. Mother testified that at the time of trial in November, she lived in an unfurnished apartment with both of her children, Kennedy and her daughter from a previous relationship. Mother further testified that she and her children slept on air mattresses in the apartment, and that, despite her requests, Father had not provided them with furniture from the marital residence, where he continued to reside.

At several points in the proceedings, the trial court interrupted examination of both parties during their repeated descriptions of acrimonious encounters in order to direct questioning counsel to focus on other issues, once remarking that "[t]hese people obviously haven't gotten along and couldn't get along and fought like cats and dogs." After a thorough review of the record, we have determined that the evidence does not preponderate against this finding. It is evident from the record that both parties have a very strong relationship with young Kennedy, and that Mr. Chandler intends to continue being a loving father. However, because the parties currently lack the cooperative spirit necessary for a joint custody arrangement, the trial court clearly did not abuse its discretion in declining to adopt Father's proposed parenting schedule.

### B. Decision-Making Authority

Father next alleges error with the trial court's decision to grant Mother the authority to make decisions related to the child's development, particularly with regard to his education and extracurricular activities. Father again relies Dr. Bayer's report for support, particularly his finding that considering Father's "superior academic achievement, he should have a greater input [into] the child's academic future." Father cites his own educational credentials and argues that, in contrast to Mother, who has a high school education, he graduated from college with a degree in business management and is currently working on his master's degree. He states that he keeps educational games and books in his home, that he often plays golf and basketball with his son, and that he hopes to enroll the child in "boy scouts and things of that nature when he is older."

As to this issue, we find Appellant's sole reliance on Dr. Bayer's findings in his psychological evaluation unavailing. Regardless of Dr. Bayer's status as a court-appointed psychologist and expert, his opinions were clearly not binding on the trial court. See **King v. King**, No. 01-A-01-9110-PB-00370, 1992 Tenn. App. LEXIS 874, at *14-15 (Tenn. Ct. App. Oct. 23, 1992). Like any other expert, Dr. Bayer's opinions are advisory, and the trial court could give them whatever weight it deemed appropriate in light of the other facts in evidence. **Id.** at *15 (citing

***Airline Constr., Inc. v. Barr***, 807 S.W.2d 247, 270 (Tenn. 1990); ***Gibson v. Ferguson***, 562 S.W.2d 188, 189-90 (Tenn. 1976)). The record affirmatively reflects that the trial court considered Dr. Bayer's opinions, but decided to award Mother decision-making authority for the child in these areas based upon its finding that Mother had been the primary caretaker of the child since birth. The evidence does not preponderate against this finding, and we similarly find no abuse of discretion by the trial court on this issue.

### C. Federal Income Tax Exemption

Appellant argues that the trial court erred when it awarded Mother the right to claim the child as a dependent for federal income taxation purposes. In support of his position, Father asserts that he is providing a clear majority of the child's financial support, citing his own monthly child support obligation of $1,033 per month and Mother's gross monthly income of $1,421.

"Section 152(e) of the [Internal Revenue Code] automatically assigns the dependency exemption to the parent with whom the child resides for more than one-half of the year. *The portion of the child's support paid by each parent is not relevant*." JANET L. RICHARDS, RICHARDS ON TENNESSEE FAMILY LAW, § 15-5(a) (2d ed. 2004) (emphasis added); *see also* ***Travis v. Travis***, No. E2000-01043-COA-R3-CV, 2001 Tenn. App. LEXIS 175, at *12-13 (Tenn. Ct. App. Mar. 16, 2001) ( "The custodial parent is generally entitled to claim the child as a dependent under the Internal Revenue Code."). The decision of a trial court regarding the allocation of exemptions for minor children is discretionary and should rest on facts of the particular case. ***Barabas v. Rogers***, 868 S.W.2d 283, 289 (Tenn. Ct. App. 1993). In ***Engel v. Young***, No. M2001-00734-COA-R3-CV, 2003 WL 1129451 (Tenn. Ct. App. Mar. 14, 2003), the Middle Section of this Court cited decisions recognizing that "[n]othing in the federal law prohibits state courts from exercising their power to order a party to execute the release that would enable the noncustodial parent to obtain the exemption." ***Engel***, 2003 WL 1129451, at *7 (citing ***Barabas***, 868 S.W.2d at 289 (Tenn. Ct. App. 1993)); *see also* ***Hooper v. Hooper***, No. 1130, 1988 WL 10082, at *1 (Tenn. Ct. App. Feb. 9, 1988). In fashioning child support orders, the trial court should consider "such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties." ***Engel***, 2003 WL 1129451, at *6 (citing Tenn. Code Ann. § 36-5-101(d)(1)(L)).

In ***Barabas***, 868 S.W.2d at 289 (Tenn. Ct. App. 1993), we discussed the history of the dependency exemption, stating:

> The Tax Reform Act of 1984 changed the standards for awarding the dependency exemption to a noncustodial parent. The Internal Review Code now allocates the exemption to the custodial parent unless one of three exceptions applies. These exceptions involve situations where the custodial parent has released its claim for an exemption 26 U.S.C. § 152(e)(2), multiple-support agreements 26 U.S.C. § 152(e)(3), and certain pre-1985 instruments 26 U.S.C. § 152(e)(4).

The Tax Reform Act's legislative history indicates that the purpose of these changes was to alleviate the fact-finding burden on the Internal Revenue Service. *Hooper v. Hooper*, supra, slip op. at 2. Under prior law, the question of how much support each parent had provided was a fact issue to be resolved by the Internal Revenue Service whenever the parents could not agree and both attempted to claim the exemption. Now the Internal Revenue Service need not concern itself with these questions because the only relevant issues are which parent is the custodial parent and whether the custodial parent has waived his or her right to claim the exemption.

Nothing in the federal law prohibits state courts from exercising their power to order a party to execute the release that would enable the noncustodial parent to obtain the exemption. *Hooper v. Hooper*, supra, slip op. at 3. State court allocation of the exemption among the parents is not inconsistent with 26 U.S.C. § 152(e)'s legislative history, and state court involvement has no impact on the Internal Revenue Service since it will not embroil the Internal Revenue Service in another fact-finding proceeding.

We affirmed the trial court's decision to divide the right to claim the exemption between the parties, because we found no evidence in the record to support a conclusion that the trial court had abused its discretion, and the record further indicated that the trial court's decision was supported by financial and tax equities. *Id.*

In *Travis*, this Court affirmed a trial court's award of the exemption to a noncustodial father on two grounds. *Travis*, 2001 Tenn. App. LEXIS 175, at *14. First, considering the large disparity in incomes of the mother and father, less than $4,000 per year and $34,000 per year respectively, we determined that the exemption would be of great benefit to the father and of relatively little use to the mother. *Id.* at *13. Additionally, we noted that the father had voluntarily undertaken responsibility for a substantial portion of his child's expenses, and finding no abuse of discretion by the trial court, we concluded that the father should be allowed the exemption as a matter of equity. *Id.* at *14.

Likewise, in *Rafieetary v. Rafieetary*, No. W2003-00121-COA-R3-CV, 2004 Tenn. App. LEXIS 301, at *20 (Tenn. Ct. App. Apr. 29, 2004), we were faced with this issue. In *Rafieetary*, the trial court awarded each party use of the dependency exemption in alternating years. *Id.* at *20. The father cited the *Travis* decision in support of his argument that he should have been awarded the exemption outright because of his significantly higher income. *Id.* at *19. Although we noted that the appealing husband did bear many of the child's financial expenses, we affirmed the trial court's decision, finding that the mother in that case earned considerably higher income than the mother in *Travis* and concluding that the exemption was of more use to her under the circumstances. *Id.* at *20.

We review a discretionary decision of the trial court to determine: "(1) whether the factual basis of the decision is supported by sufficient evidence; (2) whether the trial court has correctly identified and properly applied the applicable legal principles; and (3) whether the trial court's decision is within the range of acceptable alternatives." *BIF, a Div. of Gen. Signal Controls, Inc. v. Serv. Constr. Co., Inc.*, No. 87-136-II, 1988 Tenn. App. LEXIS 430, at *9 (Tenn. Ct. App. July 13, 1988). At trial, Mother testified that she worked part-time at a hair and nail salon, and that she currently works at the Peabody Hotel. Mother's gross monthly income is $1,421. Father is self-employed as a mortgage broker and receives additional income from his parents and his former barbecue restaurant, with a gross monthly income of $5,284. It appears, therefore, that both parties stand to benefit from the dependency exemption. It is clear that Father will be providing financial support for the child, considering the child support award of $1,033 per month. However, Mother testified that she has also been providing substantial financial support for young Kennedy, including the purchase of clothing and other necessities for the child, and payment of his daycare expenses.

We do not believe that the trial court abused it discretion in awarding Mother, as the primary residential parent, the dependency exemption for the minor child. Although one exception to the principle that the custodial parent is generally entitled to the exemption applies when that parent has "released its claim for an exemption [according to] 26 U.S.C. § 152(e)(2)," *Barabas*, 868 S.W.2d at 289, such is not the situation in this case. Furthermore, although state courts are vested with the authority to order such a release by the custodial parent in appropriate circumstances, Father has not persuaded us that the trial court's failure to do so constituted an abuse of its discretion in this case. Our review of the record leads us to conclude that further considerations in equity do not compel the result that Father seeks on appeal. Finding it to be an appropriate exercise of discretion, we affirm the trial court's decision to award Mother the exemption.

### D. Award of Attorney's Fees to Mother

Father assigns error to the trial court's award to Mother of $1,500 in attorney's fees corresponding with the custody proceedings. He contends that the marital dissolution agreement entered into between the parties prevents such an award because of a provision stating: "Husband will be solely responsible for the attorney fees and expenses incurred by Lynda F. Teems. Wife will be solely responsible for the attorney fees and expenses incurred by Monica N. Wharton."

When interpreting the provisions of a marital dissolution agreement that retain their contractual nature, we apply general contract principles, seeking to ascertain and effectuate the intent of the parties at the time the agreement was executed. *McIntire v. McIntire*, No. W2004-02904-COA-R3-CV, 2006 Tenn. App. LEXIS 394, at *28-29 (Tenn. Ct. App. June 13, 2006) (citing *Buettner v. Buettner*, 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005)). Having reviewed the relevant provision of the marital dissolution agreement entered into by the parties, we conclude that they intended to be responsible for their own legal expenses incurred throughout the proceedings. Therefore, the trial court erred in awarding Mother $1,500 in attorney's fees, and we reverse this aspect of the judgment. Mother's request for an award of attorney's fees incurred as a result of this appeal is respectfully denied.

## IV. CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed in part, and reversed in part. Costs are assessed equally against Appellant, Kylan Chandler, and Appellee, Shanette Collier Chandler, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE