IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 15, 2005 Session

## SANDRA LEE BUETTNER v. NEIL WILLIAM BUETTNER

**Direct Appeal from the Chancery Court for Henry County**
**No. 17787     Ron E. Harmon, Chancellor**

---

**No. W20404-01788-COA-R3-CV - Filed June 2, 2005**

---

The trial court increased Husband's alimony obligation pursuant to the parties' MDA. It also denied Husband's petition to modify alimony and increased Wife's child support obligation retroactive to June 1, 2003. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., joined. W. FRANK CRAWFORD, P.J., W.S., filed a partial dissent.

Michael A. Carter, Milan, Tennessee, for the appellant, Neil William Buettner, Jr.

David F. Hessing, Paris, Tennessee, for the appellee, Sandra Lee Buettner.

Paul G. Summers, Attorney General and Reporter, and Stuart F. Wilson-Patton, Senior Counsel, in support of the constitutionality of the Tennessee Child Support Guidelines.

**OPINION**

This appeal arises from the trial court's judgment increasing alimony and modifying child support. The parties to this case, Sandra Lee Buettner (Ms. Buettner) and Neil William Buettner (Mr. Buettner), were divorced in 1998. Pursuant to the parties' agreement under their marital dissolution agreement ("MDA"), the trial court awarded custody of the parties' two minor children, born April 16, 1984, and December 29, 1987, to Ms. Buettner. Mr. Buettner's child support obligation was set at $2,108 per month. Pursuant to the MDA, Ms. Buettner was awarded alimony *in futuro* with annual adjustments based upon fluctuations in the consumer price index.

Since entry of the MDA in 1998, the parties have returned to court several times. In December 1999, Ms. Buettner filed a motion for contempt for failure to pay child support. In his response, Mr. Buettner denied that he had neglected or refused to pay child support and stated that

his child support obligation was automatically reduced following a reduction in income. In January 2000, Mr. Buettner filed a motion for reduction in child support and modification of the MDA. In February 2000, the trial court entered an agreed order whereby Ms. Buettner was awarded a judgment for child support arrears; child support was continued at the same level; and Mr. Buettner dismissed his motion seeking to modify child support and the MDA.

In December 2000, Mr. Buettner filed a motion to modify the final decree and previous orders. In his petition, Mr. Buettner stated that the elder child had been in Mr. Buettner's physical custody for two months. Mr. Buettner prayed for termination of his child support obligation for the elder child and for payment of child support by Ms. Buettner. In October 2001, the trial court approved a settlement whereby the parties agreed that neither owed the other back child support despite the changes in physical custody of the children. The parties further agreed that Ms. Buettner would be designated primary residential parent ("PRP") of the parties' eldest child, then 17 years of age, and Mr. Buettner would be designated PRP of the younger child, then 13 years of age. After subtracting Ms. Buettner's obligation of child support for the younger child, the trial court set Mr. Buettner's net child support payment to Ms. Buettner for support of the elder child at $1,200 per month. The parties additionally agreed to modify various portions of their MDA. In November 2001, the parties entered into a permanent parenting plan which reiterated that Mr. Buettner's net obligation of support would be $1,200. This amount reflected the net obligation owed by Mr. Buettner, assuming Ms. Buettner's obligation of support to Mr. Buettner to be between $627 and $838. The parties "affirmatively acknowledge[d] that Court approval must be obtained before child support can be reduced or modified, unless such payments are automatically reduced or terminated under the terms of the parenting plan."

In January 2004, Ms. Buettner filed a motion seeking alimony arrearages and an increase in alimony pursuant to the 1998 MDA. In her motion, she stated that Mr. Buettner was currently paying alimony in the amount of $1,618 per month. She further stated that the elder child, for whom Ms. Buettner had been the PRP, had reached the age of majority in April 2002, and had graduated from high school in May 2002. She asserted that, under the MDA, as of June 2002, Mr. Buettner's alimony obligation increased by 50% of the amount of child support due. She also asserted that Mr. Buettner had reported a gross income of $185,677 to the IRS for the year 2002, and that his child support obligation for 2002 was $1,908 per month. Ms. Buettner sought an increase in alimony of $954 per month for June 1, 2002, to December 31, 2002, and of $1,067 per month for January 1 to December 31, 2003. Ms. Buettner prayed for arrearages in the amount of $19,482.

In February 2004, Mr. Buettner filed a motion seeking to modify alimony *in futuro* based on a material change of circumstances. He also filed a response to Ms. Buettner's petition, in which he alleged the MDA is vague and ambiguous, and a motion to increase child support. In March 2004, Ms. Buettner filed a motion to enforce the MDA, asserting that the consumer price index for the year 2003 increased 2.3% and that, pursuant to the MDA, as of January 1, 2004, Mr. Buettner was obligated to pay $2,344.75 as alimony *in futuro*.

The trial court entered its order on the several petitions on June 21, 2004. The trial court denied Mr. Buettner's motion to modify the award of alimony *in futuro*. It interpreted the alimony provision of the MDA as entitling Ms. Buettner to an increase in alimony *in futuro* of $726.75 (50% of the child support guideline amount for one child based on Mr. Buettner's income) per month from June 1, 2003, through April 30, 2004, and an increase of $759 per month commencing May 1, 2004. Based on an increase of 2.3% in the consumer price index for 2003, the trial court additionally increased the alimony payment commencing May 1, 2004, by 2.3% of the previous year's payment. In sum, the trial court ordered Mr. Buettner to pay a total of $2,344.75 (1,618 + 726.75) per month as alimony *in futuro* for June 1, 2003, through April 30, 2004, and $2466.90 per month commencing May 1, 2004. The trial court set Ms. Buettner's child support obligation at $838 per month as of June 1, 2003, and to $943 per month as of May 1, 2004. Mr. Buettner filed a timely notice of appeal to this Court.

### *Issues Presented*

Mr. Buettner raises the following issues, as we re-state them, for our review:

(1) Whether the trial court erred by declining to rule that the child support guidelines are unconstitutional.

(2) Whether the trial court erred by increasing Ms. Buettner's child support obligation retroactive to June 2003 instead of October 2001.

(3) Whether the trial court erred in interpreting the alimony provision of the parties' MDA.

(4) Whether the trial court erred by denying Mr. Buettner's motion to modify the alimony *in futuro* provision of the parties' MDA.

### *Standard of Review*

We review the trial court's findings of fact *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Our review of the trial court's conclusions on matters of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### *Analysis*

We first dispense with Mr. Buettner's assertion that the child support guidelines are unconstitutional. Mr. Buettner failed to provide the Attorney General with notice of the challenge to the constitutionality of the guidelines while this matter was before the trial court as is required by Tennessee Rule of Civil Procedure 24.04 and Tennessee Code Annotated § 29-14-107. The

Tennessee Supreme Court has noted that the failure to provide notice of a constitutional challenge to the Attorney General as mandated by Tennessee Code Annotated § 29-14-107 and Tennessee Rule of Civil Procedure 24.04 is fatal "except to the extent the challenged statutes are so clearly or blatantly unconstitutional as to obviate the necessity for any discussion." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 28 (Tenn. 2001). The child support guidelines are not clearly or blatantly unconstitutional. Therefore, we consider this issue waived.

We next turn to Mr. Buettner's assertion that the trial court erred in increasing Ms. Buettner's child support obligation retroactive to June 1, 2003, rather than October 2001. The parties' child support obligations were established by order entered by the court in October 2001. A child support order is not retroactively modifiable, but may be modified only as of the date a petition for modification is filed. Tenn. Code Ann. § 36-5-101(a)(5)(2001); *Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991). Thus, the trial court erred by increasing Ms. Buettner's child support obligation beyond February 18, 2004, the date on which Mr. Buettner filed his petition for modification. We accordingly affirm the trial court's order increasing Ms. Buettner's child support obligation, but modify the order to be effective as of February 18, 2004.

Mr. Buettner also asserts that the trial court erred in its interpretation of the alimony provision of the parties' MDA. Ms. Buettner, on the other hand, asserts the alimony provision is clear and that the trial court did not err in its interpretation. We find Ms. Buettner's assertion that the provision is clear to be somewhat disingenuous, however, in light of her statement to this Court that it was "unclear" how the increase in alimony would be calculated, although she "does not object" to the trial court's method of calculation.

When interpreting the provisions of an MDA that retain their contractual nature, we apply general contract principles. *See Davidson v. Davidson*, 916 S.W.2d 918, 923 (Tenn. Ct. App. 1995). The interpretation of a contract is a matter of law. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). When construing a contract, the court must seek to ascertain and effectuate the intent of the parties at the time the agreement was executed. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The court must construe the various provisions of a contract together, giving effect to each provision and seeking to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language they employed. *Davidson*, 916 S.W.2d at 923.

The parties' 1998 MDA provides:

8. Beginning on the date a divorce is granted in this cause and continuing until the Plaintiff [Ms. Buettner] remarries or dies, the Defendant [Mr. Buettner] will pay directly to the Plaintiff each month, beginning the month following the execution of this agreement, the sum of $1,500.00 as alimony in futuro. The aforementioned sum will be adjusted annually on January 1 of each year in an amount determined by applying the rise or fall in the Consumer Price Index to the principal amount of the

monthly alimony payment then in effect, but at no time is the monthly alimony in futuro payment to drop below $1,500.00 per month.

Additionally, as each of the parties' children's child support terminates because of reaching 18 years of age or graduating from high school, the Defendant shall pay monthly to the Plaintiff as additional alimony in futuro an amount which equals 50% of the child support that the Defendant was paying or should have paid for that child during the last income year wherein the Defendant had no decrease in income for the previous year: each payment will begin on or for the month following each child's last child support payment or child support obligation had the child reached 18 or graduated from high school. This additional alimony obligation or payments will also cease should the Plaintiff remarry or die. Furthermore, this obligation or these payments are to be made regardless of who the child is living with or who may have custody of the children when the child reaches or should have reached 18 years of age or graduates from high school.

It is the intention of this provision that as each child reaches 18 years of age or graduates from high school, or should have done so, whichever is the last to occur, the Defendant will have to begin an additional alimony in futuro payment as hereinbefore calculated. There will be in effect, not counting the original $1,500.00 per month, two additional payments to ultimately be made as added alimony in futuro, and all payments can be combined into one payment after they have begun. Should a child fail to reach 18 years of age or graduate from high school, then the alimony obligation arising in regard to that child's support will begin as if the child had reached 18 years of age or graduated from high school.

This provision clearly anticipates a minimum alimony payment of $1,500 per month, with potential annual increases based on fluctuations in the consumer price index. It also provides for two scheduled increases in alimony: one at the time the eldest child reaches the age of 18 or graduates from high school, and another at the time the younger child reaches the age of 18 or graduates from high school. The paragraph provides that the amount of this increase would be equal to 50% of the amount of child support that Mr. Buettner "was paying or should have paid . . . regardless of who the child is living with or who may have custody of the children when the child reaches or should have reached 18 years of age or graduates from high school." Thus, although this provision anticipates changes in physical custody of the children and provides for an increase in alimony "regardless" of custody, it ties the increase to the amount of child support Mr. Buettner either was or should have been paying. Additionally, the agreement provides for these increases notwithstanding a child's "fail[ure] to reach 18 years of age or graduate from high school," and provides that the amount of the increase would be 50% of the amount of child support Mr. Buettner "was paying or should have paid" for that child.

Mr. Buettner argues that, had both children continued to reside with Ms. Buettner, his child support obligation for the younger child would have remained 21% of his income upon emancipation

of the elder child. He asserts that the increase in alimony, therefore, should be 50% of 11% of his income, which is the guideline amount of 32% for two children less the 21% he would have been required to pay for support of the younger child. Mr. Buettner asserts that the trial court erred by interpreting the provision as providing that Mr. Buettner's alimony obligation would increase by 50% of 32% of his net income (then the child support guideline amount for two children) when the eldest was emancipated, and then by 50% of 21% of Mr. Buettner's net income (then the guideline amount for one child) when the younger child becomes emancipated. This, he asserts, is the interpretation of the provision urged by Ms. Buettner. Although it is somewhat unclear, we read the trial court's order as requiring an increase of 50% of 21% of Mr. Buettner's net income upon the emancipation of each child. This is the interpretation of the provision to which Ms. Buettner "does not object." We cannot agree with either interpretation.

The courts seek to construe MDAs fairly and reasonably in light of the entire agreement between the parties. *Elliott v. Elliott*, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004). We believe a reasonable reading of this provision of the parties' MDA, read in context with the entire, detailed MDA and in light of the parties' circumstances when it was executed, anticipates a total increase in alimony equal to 50% of the total amount of Mr. Buettner's child support obligation. Further, although the provision states, on one hand, that it is applicable regardless of custody, increases are based on what Mr. Buettner was paying, in fact, or "should have been paying."[1]

When the provision became enforceable following emancipation of the elder child in May 2003,[2] Mr. Buettner had been obligated to pay, as child support, 21% of his net income as defined by the guidelines. Pursuant to the MDA, in June 2003 Ms. Buettner became entitled to receive, as alimony, 50% of that amount. In the month preceding emancipation of the younger child, assuming no changes in custody, Mr. Buettner neither will nor should have any child support obligation payable to Ms. Buettner. Thus, the second increase in alimony will be $0.

We finally turn to whether the trial court erred in refusing to modify the award of alimony provided by the MDA provision. Generally, modification of alimony requires a substantial and material change of circumstances. Tenn. Code Ann. § 36-5-101(a)(1)(1996 & Supp.1997). The party seeking the change has the burden of proving that a material change of circumstances has occurred since the original award. *Elliot v. Elliot*, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991). Furthermore, the changes in circumstances are not material if they were within the contemplation of the parties when they entered into the MDA. *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990).

---

[1]We note that the provision expressly does not refer to an amount that would have been due under the guidelines. Thus, had court ordered child support been more than the guideline amount, it is conceivable that the provision would have entitled Ms. Buettner to an increase greater than the guideline minimums.

[2]The parties agree that the elder child graduated from high school and became emancipated in 2003, and that the 2002 dates was a typographical error.

In the case before us, the award of alimony was not determined by the court, but was agreed to by the parties as a contractual provision of a very detailed MDA. The alimony provision provides for annual fluctuations in the amount of alimony based on the consumer price index. It also establishes a minimum alimony payment notwithstanding potential fluctuations, and provides for increases in alimony upon the emancipation of the parties' children. When the MDA was executed, Ms. Buettner was a registered nurse, although she was not working as a nurse and had minimal income.

The parties dispute whether Ms. Buettner's return to full-time employment and resultant increase in income constitutes a substantial and material change. Mr. Buettner argues that his alimony obligation should be reduced to the $1,500 minimum amount established by the MDA because he did not anticipate that Ms. Buettner would return to work as a registered nurse on a full-time basis. Mr. Buettner testified, however, that Ms. Buettner had returned to work as a registered nurse in 1998 and stopped working the day he asked her for a divorce. Ms. Buettner, on the other hand, asserts that she had worked as a registered nurse during the marriage, that there is no evidence that she was unable to work after the divorce, and that it is "incredible" that Mr. Buettner would not have foreseen that she would return to work as a registered nurse in the future. She further asserts that both parties are health-care professional who are aware of the opportunities available for nurses.

The trial court is in the best position to assess witness credibility. Accordingly, we afford the trial court considerable deference on matters requiring a determination of credibility and will not reverse such determinations in the absence of clear and convincing evidence to the contrary. *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). In this case, we affirm the trial court's finding that there had been no substantial and material change of circumstance warranting modification of the alimony provision of the parties' MDA.

### *Holding*

Mr. Buettner's argument that the child support guidelines are unconstitutional is waived for failure to provide notice of the constitutional challenge to the Tennessee Attorney General as mandated by Tennessee Code Annotated § 29-14-107 and Tennessee Rule of Civil Procedure 24.04. We affirm the trial court's judgment increasing Ms. Buettner's child support obligation, but modify the date of increase to February 18, 2004, the date Mr. Buettner filed his petition for increase. We modify the trial court's judgment increasing Mr. Buettner's alimony obligation. We order Mr. Buettner's alimony obligation to be increased by 50% of 21% (or 11%) of Mr. Buettner's net income, as defined by the child support guidelines, beginning June 2003. Because Mr. Buettner will have no child support obligation in the month prior to emancipation of the younger child (assuming no change in custody), we reverse the trial court's finding that Ms. Buettner will be entitled to an additional increase upon emancipation of the parties' younger child and vacate the trial court's judgment on this issue. We affirm the trial court's determination that there has been no substantial and material change of circumstances warranting modification of the alimony provision of the parties' MDA. This cause is remanded to the trial court for further action

consistent with this opinion.  Costs of this appeal are taxed one-half to the Appellee, Sandra Lee Buettner, and one-half to the Appellant, Neil William Buettner, and his surety, for which execution may issue if necessary.

 

_____

DAVID R. FARMER, JUDGE