IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 18, 2008 Session

## DONNA MICHELE LOCASTRO CORBIN v. RICHARD TODD CORBIN

Direct Appeal from the Chancery Court for Shelby County
No. D-27409     Arnold Goldin, Chancellor

No. W2008-00437-COA-R3-CV - Filed February 24, 2009

This appeal involves retroactive child support.  The parties were divorced in 1996 and submitted a marital dissolution agreement that was approved by the trial court.  In 1999, the parties submitted a consent order modifying the marital dissolution agreement to provide that the father would not pay child support, but he would be responsible for providing health insurance coverage and paying for one-half of uncovered medical, dental, orthodontic, and optical expenses.  The consent order was approved by the trial court.  In 2006, the mother sought to have the consent order set aside on the basis that it was void as against public policy, and she sought an award of retroactive child support to the date of the 1999 consent order.  The trial court granted retroactive child support only to the date of the mother's petition seeking such support.  Mother appeals, claiming that retroactive child support should be awarded to the date of the 1999 consent order.  We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Richard F. Vaughn, Collierville, TN, for Appellant

William Bryan Penn, Memphis, TN, for Appellee

OPINION

## I. FACTS & PROCEDURAL HISTORY

Richard Corbin ("Father") and Donna Corbin ("Mother") were married in 1986. They had a son in 1987 and a daughter in 1990. The parties were divorced in October of 1996, and the trial court approved a marital dissolution agreement ("MDA") submitted by the parties. The MDA provided that Father and Mother would have "joint custody" of the parties' children, but Mother would be their primary caretaker. Specifically, the children would reside with Mother, but visit with Father every other weekend, every Wednesday evening, on certain holidays, and for one month during the summer. The MDA provided that Father would pay $495 per month in child support to Mother.

Soon after the divorce, on January 30, 1997, a consent order was entered which modified the divorce decree and MDA. The consent order provided that the parties would continue to share "joint custody" of the children, but Father would be the primary custodian of the parties' son, and Mother would be the primary custodian of their daughter. Each parent was to have specific visitation privileges according to the schedule originally set out in the MDA. The consent order further provided that neither parent would pay child support to the other. Both parties agreed to maintain medical insurance coverage on both minor children until they reached the age of eighteen, and the parties agreed that each would pay one-half of the children's uncovered medical, dental, and optometric expenses.

In November of 1997, Mother filed a petition to modify the consent order, seeking an increase in visitation rights with the parties' son because Father was allegedly denying her visitation with the son. On February 23, 1999, a second consent order modifying the final decree and MDA was entered which provided:

> The custodial parent of Son will hereafter be [Mother], with [Mother] having sole custody of both minor children of the parties until they reach majority . . . . [T]he visitation of the said minor children with [Father] should be at the discretion of [Mother].
>      . . . [N]either party will pay child support to the other, but both parents will continue to provide health and dental insurance coverage as previously agreed in the first consent order, with each parent to pay one-half of all uncovered expenses not otherwise covered by said insurance, including orthodontic expense . . . .
>
> [Mother] and [Father], in order to establish consistency in the life of Son, further agree that the matters of custody, visitation and support are hereby irrevocably decided as being what the parents agree are in the best interests of their children and should not hereafter be the subject of litigation.

The consent order was signed by both parties, their respective attorneys, and Chancellor Floyd Peete, Jr.

Nearly seven years later, on December 2, 2005, Father filed a petition to modify the consent order, seeking custody of the parties' then fifteen-year-old daughter. The parties' son had turned eighteen earlier that year. Father claimed that the daughter wanted to live with him, but Mother was denying him visitation. Father described several recent arguments between Mother and the daughter regarding visitation with Father over Thanksgiving, and he said that a few days later, the daughter showed up at his house with suitcases full of her belongings. He said the police arrived thereafter and returned the daughter to Mother's house. Father claimed that the daughter was depressed and doing poorly in school. He alleged that Mother often left the daughter at home alone and without food. He also claimed that Mother physically hit the daughter in the chest on at least one occasion, and he described various incidents involving verbal abuse of the daughter by Mother.

Mother filed an answer claiming that the second consent order had irrevocably decided the issues of custody, visitation, and support. However, on April 25, 2006, Mother filed a counter-petition seeking to have the second consent order set aside on the basis that it was void as against public policy. Mother sought an order requiring Father to pay retroactive child support for both children from the date of the second consent order in 1999.

On February 23, 2007, a third consent order was entered, granting temporary custody of the daughter to Father. A hearing was held on the issue of child support on June 19, 2007, before Chancellor Arnold Goldin. Relying on *Cook v. Cook*, No. M2005-02725-COA-R3-CV, 2007 WL 295238 (Tenn. Ct. App. Feb. 1, 2007), Chancellor Goldin concluded that the 1999 consent order was not void. Accordingly, he concluded that Father should pay retroactive child support only to the date of Mother's counter-petition seeking child support on April 25, 2006. Chancellor Goldin also concluded that Mother should pay child support to Father from the date of the third consent order granting custody of the daughter to Father.

The trial court entered an order referring the matter to a divorce referee for specific calculations regarding (1) the amount of child support owed by Father from April 25, 2006, the date of Mother's counter-petition seeking child support, to February 23, 2007, the date of the third consent order granting temporary custody to Father; (2) the amount of child support owed by Mother from February 23, 2007, when the third consent order was entered, until the daughter turned eighteen; and (3) the amount of child support Father would have owed from the date of the second consent order, February 23, 1999, to the date of the third consent order, February 23, 2007. An order was subsequently entered providing that Father owed $6,238 from the date of Mother's counter-petition seeking support until Father obtained temporary custody of the daughter; Mother owed $1,007 per month after Father obtained custody; and Father would have owed $85,406 in child support from the date of the second consent order in 1999 until Father obtained custody of the daughter in 2007.[1]

_____

[1] The calculations used to produce this figure are not in the record before us, and the parties do not mention whether any deviation was applied to the presumptive amount. The record does not include any information regarding the parties' jobs or income levels, and it is not clear how much visitation Father actually had with the children following the entry of the second consent order. It is undisputed that the children did continue to visit with Father.

The trial court entered its final order on January 17, 2008, finding that the second consent order entered in 1999 was not void. The court further found that it would be "unjust and inappropriate" to require Father to pay retroactive child support to the date of the second consent order. Father was ordered to pay Mother $6,238 for child support from the date that Mother sought such support until the date that Father obtained custody of the daughter. Mother was ordered to pay Father $1,007 per month from the date that Father obtained custody of the daughter until the daughter turned eighteen. Mother timely filed her notice of appeal.

## II.  ISSUE PRESENTED

Mother presents the following issue for review, slightly restated:

Was the second consent order void as against public policy because neither party was ordered to pay child support, and if so, did the trial court err in failing to award retroactive child support to the date of said consent order.

For the following reasons, we affirm the decision of the chancery court.

## III.  STANDARD OF REVIEW

We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV.  DISCUSSION

In Tennessee, parents are legally obligated to support their minor children in a manner commensurate with their own means and station in life. ***Richardson v. Spanos***, 189 S.W.3d 720, 724 (Tenn. Ct. App. 2005) (citing Tenn. Code Ann. § 34-1-102(a); *Wade v. Wade*, 115 S.W.3d 917, 920 (Tenn. Ct. App. 2002)). Since 1984, "the process and criteria for ascertaining a parent's child support obligation has been governed by Child Support Guidelines promulgated by the Tennessee Department of Human Services" in accordance with Tennessee Code Annotated section 36-5-101. *Id.* at 724-25. The Child Support Guidelines, when properly applied, create a rebuttable presumption of the proper award of child support. ***Taylor v. Fezell***, 158 S.W.3d 352, 357 (Tenn. 2005). Tenn. Code Ann. § 36-5-101(e)(1)(A). A trial court may deviate from the presumptive amount of child support, but when it does, it must "make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or the equity between the parties." Tenn. Code Ann. § 36-5-101(e)(1)(A). In addition, the court's findings must state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines. *Id.*

Tennessee Code Annotated section 36-5-101(j) provides that an agreement between parents as to child support may be affirmed, ratified, and incorporated into the court's decree. "This subsection contemplates that the agreement: 1) will be in writing; 2) will be approved by a court; 3) will be incorporated into a court order; and 4) will contain the parties' acknowledgment that they

may not alter the agreement without court approval." ***Berryhill v. Rhodes***, 21 S.W.3d 188, 191 (Tenn. 2000) (footnote omitted). Before approving a stipulation regarding child support, the trial court must use the guidelines to review the adequacy of the parties' stipulation. Tenn. Comp. R. & Regs. 1240-2-4-.01(2)(b)(1)(i)-(ii) (2006).[2] The stipulation must provide a justification for deviation if it does not meet the guidelines. ***Id.***

The Middle Section of this Court recently noted the problems that may arise when parties attempt to resolve issues of child support by agreement, and the Court explained the importance of the trial court's role when approving such agreements:

> But for a few exceptions parenting plans are drafted by the parties and submitted to the trial court for approval. Thus, the fault, at least at first, for deficient parenting plans usually lies with the parties. Although the parties are usually authors of their own misfortune, it is a misfortune that also befalls the courts when one of the parties subsequently complains and we attempt to remedy the parties' mess. It is for this and other reasons the trial courts must be vigilant gate-keepers to assure compliance with the applicable child support laws so the parties do not enter into invalid agreements which may pose a threat to the welfare of children or perpetuate a fraud upon others.

***State ex rel. Woodard v. Woodard***, No. M2004-01981-COA-R3-CV, 2006 WL 1343209, at *4 (Tenn. Ct. App. May 16, 2006). Once a child support order is entered, it is "a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state." Tenn. Code Ann. § 36-5-101(f)(1). A child support order is not subject to modification "as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties." ***Id.*** In other words, a child support order is not retroactively modifiable; it may be modified only as of the date a petition for modification is filed. ***Buettner v. Buettner***, 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005) (citing Tenn. Code Ann. § 36-5-101(a)(5)(2001); *Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991)).

On the other hand, "agreements, incorporated in court decrees or otherwise, which relieve a natural or adoptive parent of his or her obligation to provide child support are void as against public policy as established by the General Assembly." ***Witt v. Witt***, 929 S.W.2d 360, 363 (Tenn. Ct. App. 1996). In ***Witt***, the parties stipulated in their marital dissolution agreement that the child born during their marriage was not fathered by the husband, and the MDA stated that the wife "hereby waives any and all child support payments which would be due and owing" by the husband. ***Id.*** at 361. The parties later discovered that the husband was the child's father, and the trial court set aside the MDA provisions relating to paternity. ***Id.*** The Court of Appeals affirmed, holding that "the original provisions of the marital dissolution agreement relating to paternity and child support

---

[2] These requirements were previously located at Tenn. Comp. R. & Regs. 1240-2-4-.02(4) (1994).

are void as against the public policy of this state and [] the court may, sua sponte, set aside a void order or a void agreement incorporated within an order or decree." *Id.* at 362.

In *Witt*, the Court did not discuss the issue of retroactive child support. However, in other cases where an order has been declared void for failure to require the payment of child support, courts have awarded retroactive support to the date of the void order. For example, in **State ex rel. Wrzesniewski v. Miller**, 77 S.W.3d 195, 196 (Tenn. Ct. App. 2001), the parties had submitted an agreed order after their divorce which stated, "Due to the parties current economic situation, child support shall not be ordered and the state guidelines shall not apply." The agreed order also provided that it was "final and binding" as to custody and child support. *Id.* Approximately one year later, the father filed, through the state, a petition seeking current and retroactive child support. *Id.* The Court of Appeals affirmed the trial court's decision to award retroactive child support, stating, "The duty of support cannot be permanently bargained away; agreements not to seek future increases in child support are likewise void as against public policy." *Id.* (citing *Berryhill*, 21 S.W.3d at 193).[3]

In **State ex rel. Flatt v. Flatt**, No. W2007-01376-COA-R3-CV, 2008 WL 794521, at *2 (Tenn. Ct. App. Mar. 27, 2008), the parties' marital dissolution agreement provided that the father would not have to pay child support until the parties sold one of their real properties. Six weeks after the divorce, the mother filed a petition to set aside the final decree because the father was not paying child support. *Id.* at *3. However, the trial court refused to require the father to pay child support until the house sold. *Id.* at *4. On appeal, we held that the provision of the decree allowing the father to avoid paying child support indefinitely was void, and we remanded the case for a determination of retroactive child support from the date of the divorce decree. *Id*; *see also* **Curry v. Curry**, No. M2007-02446-COA-R3-CV, 2008 WL 4426895, at *12 (Tenn. Ct. App. W.S. Sept. 18, 2008) ("Mr. Curry is obligated to support the minor child and any agreement between the parties to relieve that obligation (even short-term) is void, *ab initio*, as it usurps the child's right to the support.").

In **Smith v. Smith**, No. M2000-02186-COA-R3-CV, 2001 WL 1035174, at *11 (Tenn. Ct. App. W.S. Sept. 11, 2001), however, retroactive support was only ordered from the date when the petition seeking such support was filed. Following the parties' divorce, an agreed order was entered providing that the mother would have sole custody of the parties' child. *Id.* at *1-2. The agreed order did not address child support, but it did provide that the father would pay $35,000 into a college fund for the child. *Id.* at *2. Twenty months later, the mother filed a petition to modify regarding child support. *Id.* The trial court found that the agreed order was void as against public policy and ordered the husband to pay child support, but the court refused to order retroactive child support. *Id.* On appeal, we affirmed the trial court's finding that the agreed order was void. *Id.* at *6. We concluded that the trial court should have awarded retroactive child support but instructed the trial court on remand to award such support only retroactive to the date of the mother's filing of

---

[3] In the case before us, neither party on appeal seeks to enforce the provision of the consent decree stating that custody and visitation issues were "irrevocably decided." This provision is clearly void and unenforceable, and the trial court correctly proceeded to consider the parties' petitions to modify the decree.

-6-

the petition to modify. *Id.* at *11; *see also* **Chadwell v. Chadwell**, No. M1999-00675-COA-R3-CV, 2000 WL 688715, at *3 (Tenn. Ct. App. 2000) (awarding retroactive child support on appeal, but only from the date of the final hearing in the trial court).

The trial court in this case relied on **Cook v. Cook**, No. M2005-02725-COA-R3-CV, 2007 WL 295238 (Tenn. Ct. App. Feb. 1, 2007), when holding that retroactive child support should only be awarded to the date of Mother's counter-petition seeking child support. In **Cook**, the parties' marital dissolution agreement, entered in 2001, provided that the parties' children would reside with the mother during the week and with the father on weekends. *Id.* at *1. However, it also provided that the mother would pay the father $400 per month in child support. *Id.* In 2005, the mother filed a petition seeking to have the previous order declared void as against public policy because it required the primary residential parent to pay child support to the non-custodial parent. *Id.* at *2. The mother sought child support retroactive to the date of the 2001 decree. *Id.* The trial court held that the 2001 order was not void, and it awarded the mother child support only retroactive to the date of her petition seeking child support. *Id.* On appeal, the Court began by noting that the mother's petition to modify the 2001 divorce decree constituted a collateral attack against the decree rather than a direct appeal of the decree. *Id.* at *3. The Court then framed the issue before it as "whether the 2001 Final Decree of Divorce, and specifically the child support award therein, was void." *Id.* The Court explained that there is a "distinction between a void judgment, which is subject to collateral attack, and a voidable judgment, which is not subject to collateral attack." *Id.* "[A] divorce decree is void and subject to collateral attack only where the trial court lacks general jurisdiction of the subject matter, rules on an issue wholly outside of the pleadings, or lacks jurisdiction over the party complaining." *Id.* at *3 (quoting *Gentry v. Gentry*, 924 S.W.2d 678, 680-81 (Tenn. 1996)). Because the trial court in **Cook** had subject matter and personal jurisdiction, and did not rule on an issue outside the pleadings, the 2001 decree was not void. *Id.* at *4. In addition, the fact that the decree required the primary residential parent to pay child support did not render it void *ab initio. Id.* at *4, n.10. The Court further noted that a trial court's failure to provide a written explanation for a deviation from the guidelines "will not operate to void a final order." *Id.* Thus, the Court of Appeals affirmed the trial court's award of retroactive child support only from the date of the mother's petition seeking such support. *Id.* at *5.

The same approach was utilized by the Court in **State ex rel. Woodard v. Woodard**, No. M2004-01981-COA-R3-CV, 2006 WL 1343209 (Tenn. Ct. App. May 16, 2006). Pursuant to the parenting plan entered in the parties' divorce proceedings, the mother and father would share parenting time. *Id.* at *1. The parenting plan provided that neither party would pay child support to the other, but the father would pay for the children's health insurance and one-half of the uncovered medical, dental, and orthodontic costs. *Id.* Approximately a year after the divorce, the State filed a petition on behalf of the mother seeking retroactive child support. *Id.* at *2. The State contended that the parenting plan was void as a matter of law because it did not set child support or comply with the requirements for deviation. *Id.* at *3. The Court of Appeals rejected this argument, stating that the father was not effectively relieved of his duty to pay child support because he was required to provide medical insurance and to reimburse the mother for half the uncovered medical and dental expenses. *Id.* Again, the Court emphasized that it was "important to understand the

procedural posture of this appeal. This appeal is not a direct appeal of the 2001 Parenting Plan[.]" *Id.* The Court described the threshold for setting aside the "now final 2001 Parenting Plan" as "very high." *Id.* at *4. Because the father was not effectively relieved of his child support obligation, the Court found "no justification to declare the 2001 Parenting Plan void, as we did in *Witt*, 929 S.W.2d 360[.]" *Id.* In addition, the Court found it "immaterial that the record [did] not provide a satisfactory explanation justifying a deviation from the Guidelines to the extent Father's child support obligation is limited to insurance and reimbursement of medical and dental expenses, while his income is triple that of Mother." *Id.* Therefore, the Court affirmed the trial court's decision to dismiss the State's petition for retroactive child support. *Id*; *see also Frazier v. Frazier*, 72 S.W.3d 333, 336-37 (Tenn. Ct. App. 2001) (discussing the difference between void and voidable judgments when asked to set aside a divorce decree's provision regarding child support).

Applying all these principles to the case at bar, we conclude that the trial court did not err in awarding retroactive child support only from the date of Mother's counter-petition to modify the consent order. The second consent order entered by the parties in 1999 was not void for lack of jurisdiction or for ruling on an issue outside the pleadings. Furthermore, the consent order was not void based on the fact that it only required Father to pay health insurance, dental, orthodontic, and optical expenses. *See Woodard*, 2006 WL 1343209, at *3. This is not a case where a parent was completely relieved of responsibility toward the child, as in *Witt* and *Wrzesniewski*. *See Cook*, 2007 WL 295238, at *2, n.6 (explaining the Court's previous opinion in *Witt*).

Father argued on appeal that if this Court ruled in his favor, he should be awarded his attorney's fees on appeal pursuant to the following provision in the MDA:

> [I]n the event that any litigation ensues concerning any of the terms of this Agreement at any time, then the prevailing party shall have the attorney fees incurred by said prevailing party in said litigation paid by the losing party[.]

Both consent orders modifying the MDA provided that any provisions of the MDA that were not modified or amended by the consent order were affirmed. Therefore, we award Father his attorney's fees on appeal as provided by the MDA and remand for determination of an appropriate fee.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellant, Donna Michele Locastro Corbin, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.