IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 11, 2020 Session

## SUZANNE ELAINE CRAWLEY COWAN v. ROBERT ELMO COWAN, JR.

Appeal from the Circuit Court for Shelby County
No. CT-000715-16  Mary L. Wagner, Judge
_____

No. W2019-00179-COA-R3-CV – Filed April 24, 2020
_____

This appeal concerns a post-divorce proceeding for contempt.  Wife filed a petition for scire facias and civil contempt, alleging Husband willfully disobeyed the terms of the parties' marital dissolution agreement.  The trial court granted Wife's petition, awarding her one-half of Husband's retirement bonus, and held Husband in civil contempt.  The trial court granted Wife attorney's fees for enforcing the parties' marital dissolution agreement. For the reasons stated herein, we agree that Wife is entitled to one-half of Husband's net retirement bonus, that Husband willfully violated the parties' marital dissolution agreement and should be held in civil contempt for this violation, and that Wife should be awarded attorney's fees for having to enforce the agreement.  We therefore affirm the decision of the circuit court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Rachael Emily Putnam and Hallie Goodman Flanagan, Memphis, Tennessee, for the appellant, Robert Elmo Cowan, Jr.

Vickie Hardy Jones, Memphis, Tennessee, for the appellee, Suzanne Elaine Crawley Cowan.

## OPINION

### I.     FACTS & PROCEDURAL HISTORY

Robert Elmo Cowan, Jr. ("Husband") and Suzanne Elaine Crawley Cowan ("Wife")

married in April 1986.  Wife filed her complaint for divorce in February 2016.  Husband filed his answer and counter-complaint for divorce in April 2016.  On April 5, 2017, the trial court granted Wife an absolute divorce on the ground of irreconcilable differences and entered a final decree of divorce, which approved and incorporated therein the terms of the parties' marital dissolution agreement ("MDA").

The MDA was intended to be an "equitable settlement of all property rights between the parties."  Matters such as alimony payments to Wife, distribution of marital property, and sale of the marital residence were resolved in the MDA and are undisputed.  Relevant to this appeal are paragraphs 7 and 23.  Paragraph 23 states, in the event a "party has willfully breached any provision of this Agreement, then the breaching party shall pay to the other party all reasonable attorneys' fees and costs incurred in the enforcement of any such provision or provisions . . . ."  Paragraph 7 is the primary source of the parties' contention.  It reads:

> If Husband receives a one-time lump sum payment in the nature of a bonus in connection with work performed after the execution of this Agreement, Husband shall receive said payment, even if paid to him at the time of his retirement.  If, at or about the time of his retirement, Husband receives a one-time lump sum payment in connection with his retirement or his years of service, Husband shall pay to Wife a sum equal to one-half of the net amount that he receives upon his receipt of the same. . . . Said payment is made to effectuate an equitable division of the marital property and shall not be taxable to Wife or deductible by Husband.  Husband shall provide to Wife all documentation necessary for her to verify that she received proper payment under this paragraph.

Husband worked as a pilot for Federal Express ("FedEx") from December 1983 until his retirement on February 24, 2018.  Based on his career as a pilot, upon satisfying the necessary criteria, Husband was entitled to an "End of Career Sick Leave/Advance Notice of Planned Retirement Bonus" ("the Bonus").  Amy Hutchinson, Senior Adviser in Labor Relations and Pilot Benefits at FedEx, testified to the eligibility requirements of the Bonus.  The Bonus is governed under Section 28-F of the FedEx pilots' collective bargaining agreement ("Section 28-F").  Section 28-F states several requirements that must be met to receive the Bonus.  The pilot must:  (1) retire at age 60 or older; (2) provide 12 months' notice of his or her retirement; and (3) actually retire in the month the pilot turns 65 or on December 31 of the noted year.

Prior to the execution of the MDA, on February 7, 2017, Husband notified FedEx of his intent to retire on February 24, 2018.  Husband reached the of age 65 in February 2018 and did in fact retire on February 24, 2018.  As a result, Husband satisfied the eligibility requirements of the Bonus.  On March 21, 2018, Husband received the Bonus in

the gross amount of $59,250.82 ($44,026.18 net).[1]  The parties do not dispute how the Bonus was calculated.  As Ms. Hutchinson explained, the total amount awarded is the sum of two amounts.  The first amount is the lesser of three items:  item one, "pay in excess of $520,000 over the last 24 months of a pilot's career;" item two, "50 percent of the pilot's disability/sick account balance times the last pay rate;" and item three, $110,000.  For Husband, item two was the lesser of the three, equaling $19,205.  The second piece of the Bonus calculation is a predetermined figure based on the pilot's age and years of service at FedEx as of November 2, 2015.  This figure is set under a payment chart in Section 28-F.  The majority of Husband's gross bonus was the result of the predetermined figure in the second piece of the calculation.  Husband's age and years of service listed this second figure at $40,000.  Ms. Hutchinson explained, according to Section 28-F's payment chart, Husband was required to accrue 23 years of vesting service at FedEx to receive the full $40,000 portion of the Bonus.  Had Husband accrued less than 23 years of service as of November 2, 2015, the gross amount would have been reduced by $10,000.

Wife first made a demand for a one-half share of the Bonus in February 2018, before Husband received it.  Throughout this dispute, Wife has asserted she is entitled to one-half of the Bonus under sentence two of paragraph 7 in the parties' MDA.  Again, sentence two states, "If, at or about the time of his retirement, Husband receives a one-time lump sum payment in connection with his retirement or his years of service, Husband shall pay to Wife a sum equal to one-half of the net amount that he receives upon his receipt of same."  Husband has denied Wife's requests, asserting sentence one of paragraph 7 applies as payment for "work performed after the execution of [the MDA]," meaning he should receive 100% of the Bonus.  Wife filed a Petition for Scire Facias and Citation for Civil Contempt and for Attorney Fees on May 3, 2018.  In her petition Wife requested that half of the Bonus payment be made to her pursuant to paragraph 7 of the MDA, that Husband show cause as to why he should not be held in contempt, and that attorney fees under paragraph 23 of the MDA be awarded to her.  Husband filed a response to Wife's petition on October 16, 2018.

On October 22, 2018, the cause was heard before the trial court.  At trial, the parties agreed the facts were not in dispute and that the only disagreement was over the interpretation of paragraph 7.  Both parties stated paragraph 7 was unambiguous, but that they reached different interpretations of its wording.  After testimony from Ms. Hutchinson and Husband, the court gave an oral ruling.  The court relied on Ms. Hutchinson's testimony in finding the Bonus was in fact a "career retirement bonus."  The court stated the Bonus "was not received in connection with work performed [after execution of the MDA], but in connection with retirement or years of service."  As a result, the court applied sentence two of paragraph 7 and awarded Wife $22,013.09 as one-half of the net Bonus.

---

[1] Under paragraph 7, the parties defined the "net amount" of the Bonus as "the gross amount less federal income taxes at the rate of a single taxpayer with two dependency exemptions, less applicable Social Security and Medicare taxes."

In regard to contempt, the court found the final decree of divorce (incorporating the MDA) was a lawful order and was not void. It further found that Husband had the ability to pay Wife her requested one-half share of the Bonus but that he refused to do so. Therefore, the court found Husband in civil contempt of court and awarded Wife $10,509.71 in attorney's fees pursuant to paragraph 23 of the MDA.

On November 5, 2018, the court entered a written order on its oral ruling, incorporating the transcript of the oral ruling by reference. The court found Wife's asserted $10,509.71 in attorney's fees to be necessary and reasonable. Shortly thereafter, Husband filed a Rule 52 Motion for Additional Findings of Fact and Conclusions of Law and/or Rule 59 Motion to Alter or Amend the Court's Order. Husband asserted the court did not make the necessary findings of fact or conclusions of law and that the court's ruling was in contradiction to Ms. Hutchison's testimony. The court heard Husband's motion on December 17, 2018, and repeated its previous ruling. The court stated that the parties agreed the MDA was clear, specific, and unambiguous and that it did not need to make a conclusion as to whether the MDA was ambiguous to make its factual determinations. For having to respond to Husband's motion, the court awarded Wife an additional $1,902.97 in attorney's fees under the MDA. Husband timely appealed the order on Wife's petition and the court's grant of attorney's fees.[2]

## II.     ISSUES PRESENTED

Husband presents the following issues for review on appeal, which we have reworded.

1. Whether the trial court properly awarded Wife one-half of Husband's Bonus from March 2018;

2. Whether the trial court properly found Husband in contempt;

3. Whether Wife was properly awarded attorney's fees on her Petition for Scire Facias and Citation for Civil Contempt and for Attorney Fees and for Husband's Rule 52 Motion for Additional Findings of Fact and Conclusions of Law and/or Rule 59 Motion to Alter or Amend the Court's Order; and

---

[2] We note, Wife is correct in asserting the references in Husband's appellate brief to the depositions of Ms. Hutchinson and Terrence McTigue, Senior Labor Relations Counsel of the Airline Pilots Association, are improper. There is no indication either deposition was introduced or read into evidence on October 22, 2018 or December 17, 2018. Accordingly, the contents of those depositions cannot be considered by this court. *See Allstate Ins. Co. v. Young*, 639 S.W.2d 916, 918–19 (Tenn. 1982) (stating an appellate court "can only consider on appeal the evidence considered by the [trial court]"); *Nold v. Selmer Bank & Trust Co.*, 558 S.W.2d 442, 445 (Tenn. Ct. App. 1977) (holding "the mere filing of a discovery deposition with the clerk and master does not make the deposition a part of the record on review").

4. Whether Husband should be awarded attorney's fees on this appeal.

In responding to Husband's appeal, Wife asserts one additional issue:

1. Whether this Court should award Wife attorney's fees and expenses incurred incident to defending this appeal.

For the following reasons, the decision of the circuit court is affirmed and remanded.

## III. STANDARD OF REVIEW

As in all non-jury cases, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review questions of law de novo with no presumption of correctness. *Eberbach v. Eberbach*, 535 S.W.3d 467, 473 (Tenn. 2017); *Armbrister*, 414 S.W.3d at 692 (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002)). A trial court's interpretation of a contract, such as an MDA, is a question of law, subject to de novo review with no presumption of correctness. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (citing *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003)).

"With respect to a trial court's findings of civil contempt, the factual issues of whether a party violated an order and whether a particular violation was willful, are reviewed de novo, with a presumption of correctness afforded the trial court's findings." *Lovlace v. Copley*, 418 S.W.3d 1, 17 (Tenn. 2013) (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 356–57 (Tenn. 2008)). The decision to hold a party "in civil contempt is reviewed using the abuse of discretion standard." *Id.* "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

## IV. DISCUSSION

### A. The Parties' MDA

We begin our discussion with the parties' disagreement over the application of paragraph 7 of their MDA. A marital dissolution agreement is a contract between a husband and wife in contemplation of divorce proceedings. *Eberbach*, 535 S.W.3d at 474; *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998) (citing *Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993)). Therefore, such agreements are "subject to the rules governing construction of contracts." *Barnes*, 193 S.W.3d at 498 (citing *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001) *overturned on other grounds by Howell v.*

*Howell*, 137 S. Ct. 1400 (2017); *Honeycutt*, 152 S.W.3d at 561). As with every contract, the primary goal of a court interpreting an MDA "is to ascertain and give effect to the intent of the parties at the time the agreement was executed." *Foster v. Foster*, No. M2016-01749-COA-R3-CV, 2017 WL 2992979, at *3 (Tenn. Ct. App. July 14, 2017) (citing *Buettner v. Buettner*, 183 S.W.3d 354, 358–59 (Tenn. Ct. App. 2005)). To "ascertain[] the intent of the parties, the courts must begin with the language of the agreement itself." *Id.* at *3 (citing *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006)). "The provisions of [an] agreement must be construed together, and the language in each provision must be given its natural and ordinary meaning." *Id.*

If an MDA is clear and unambiguous, it must be enforced according to its plain terms. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002) (stating "the literal meaning of the language controls the outcome of contract disputes"); *Honeycutt*, 152 S.W.3d at 561–62. A provision is ambiguous if there is "more than one reasonable interpretation" of it. *Planters Gin Co.*, 78 S.W.3d at 890. If an MDA is approved by the trial court, it is incorporated into the final decree of divorce. *Eberbach*, 535 S.W.3d at 474 (citing Tenn. Code Ann. § 36-4-103(b)). "Once incorporated, issues in the MDA that are governed by statutes, such as child support during minority and alimony, lose their contractual nature and become a judgment of the court." *Id.* "[O]n issues other than child support during minority and alimony, the MDA retains its contractual nature." *Id.*

In the present case, the parties' MDA was incorporated by reference in the final decree of divorce and, therefore, remains contractual in nature. *See Eberbach*, 535 S.W.3d at 474. Paragraph 7 of the parties' MDA is the crux of this appeal. Husband has refused to pay Wife one-half of the Bonus, claiming sentence one of paragraph 7 controls the dispute. Under Husband's interpretation, the Bonus is "in connection with work performed after the execution of [the MDA]" rather than "in connection with [Husband's] retirement or his years of service" under sentence two. We agree with the trial court that this argument is erroneous. Sentences one and two in paragraph 7 are unambiguous. Therefore, they will be enforced according to the plain and ordinary meaning of their terms. *See, e.g.*, *Planters Gin Co.*, 78 S.W.3d at 890; *Honeycutt*, 152 S.W.3d at 561–62.[3] Sentence two clearly states if a payment was *in connection* to Husband's *retirement or years of service*, Wife shall receive one-half of its net amount. In this case, the evidence shows such a connection.[4]

---

[3] The parties agree paragraph 7 is unambiguous but disagree as to its meaning. Accordingly, ambiguity does not result "merely because the parties may differ as to interpretations of certain of its provisions." *Johnson*, 37 S.W.3d at 896 (quoting *Cookeville Gynecology & Obstetrics, P.C. v. Se. Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994)).

[4] Note, sentence one states Husband may receive 100% of a payment, "even if paid to him at the time of his retirement." However, for this to occur, the payment must be made in connection with work performed after the execution of the MDA. The timing of said payment would only be conditional to his retirement, rather than the result of it.

- 6 -

Husband is correct that several of the conditions for the Bonus were satisfied subsequent to the MDA's execution. These conditions include Husband's retirement in February 2018; him being at least 60 years old at retirement; and him working 12 additional months (10 after the final decree of divorce) after giving FedEx notice of his intent to retire. However, this argument ignores several crucial facts. First, the Bonus was received as a result of Husband's retirement. Ms. Hutchison stated the Bonus "was a result of the end of career retirement bonus." The Bonus was not based on Husband's additional or exceptional service in the months following the final decree of divorce. Second, $40,000 of the Bonus was the result of Husband's age and years of service as of November 2015, before the MDA's execution. Ms. Hutchinson explained the $40,000 was added according to the payment chart in Section 28-F. Under the same system, if Husband had accrued only 23 years of service as of November 2015, the Bonus would have been reduced by $10,000. This is true regardless of any additional work done *after* the execution of the MDA. While Husband's length of employment was not relevant to his eligibility for the Bonus, it certainly was relevant in calculating the amount awarded. These facts clearly align with sentence two of the MDA, which requires Husband to pay Wife one-half of "a one-time lump sum payment in connection with [Husband's] retirement or his years of service[.]" As a result, Wife is entitled to one-half of the net amount of the Bonus, equaling $22,013.09.

## B. Contempt

We now turn to whether Husband should be found in civil contempt for failing to abide by the terms of the MDA. Civil contempt based on the violation of a court order has four elements:

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka*, 249 S.W.3d at 354–55 (footnotes omitted).

An order is "lawful" if it is issued by a court with jurisdiction over the parties and the subject matter of the case. *Id.* at 355; *Brooks v. Brooks*, No. E2010-02614-COA-R3-CV, 2011 WL 13165394, at *2 (Tenn. Ct. App. Sept. 9, 2011). To be "clear, specific, and unambiguous" the order must "precisely spell[] out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden." *Konvalinka*, 249 S.W.3d at 355. Determining the ambiguity of an order in a contempt action is subject to de novo review. *Id.* at 356. Whether a person "actually violate[s]" an order is a factual determination based on a preponderance of the evidence. *Id.* (citing *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003)). Lastly, "willful

conduct" is "intentional or voluntary rather than accidental or inadvertent." *Id.* at 357 (quoting *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006)). "[A] person acts 'willfully' if he or she . . . knows what he or she is doing, and intends to do what he or she is doing." *Id.* A trial court's determination of whether to hold a party in civil contempt is reviewed on an abuse of discretion standard of review. *Id.* at 358 (citing *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993); *Moody v. Hutchison*, 159 S.W.3d 15, 25–26 (Tenn. Ct. App. 2004)).

There is no dispute that the final decree of divorce, which incorporated the MDA, is a lawful order. For the reasons stated above, by the terms of the MDA, the order was clear, specific, and unambiguous. Paragraph 7 adequately describes the type of payments that would entitle Wife to one-half of the net amount. By its terms, Wife is entitled to payments made in relation to Husband's retirement or his age and years of service. Both possibilities have occurred with the Bonus. The wording on this issue is unambiguous. Further, despite Husband's contentions to the contrary, the trial court did make the necessary findings to ascertain which sentence to apply in paragraph 7. *See* Tenn. R. Civ. P. 52.01 (stating in bench trials "the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment"). In its oral ruling, the trial court considered the evidence presented and described its reasoning in applying sentence two.[5] Because paragraph 7 is unambiguous, the court was not required to make a finding on its meaning at the outset.

It is undisputed that sentence two of paragraph 7 is unambiguous and controls the facts of this case. Husband violated the MDA by refusing to pay Wife one-half of the Bonus. As stated by the trial court, Husband had the funds to pay Wife her share of the Bonus, but he refused to do so. We find no error in the court's reasoning. The evidence does not show the court abused its discretion in finding Husband to be in contempt of the prior order. Therefore, we affirm the trial court's decision to hold Husband in civil contempt for willfully violating the terms of the MDA as incorporated into the final decree of divorce.

### C. Attorney's Fees

We will collectively address the issues raised regarding attorney's fees awarded by the trial court and those requested on appeal. Generally, Tennessee follows the "American Rule" on attorney's fees. *Eberbach*, 535 S.W.3d at 474. Under the American Rule, parties are responsible for their own attorney's fees. *Id.* (citing *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009)). There are two exceptions to this

---

[5] The trial court incorporated a transcript of its oral findings of fact and conclusions of law into its order. In said transcript, the court refers to paragraph 6, rather than 7 of the MDA. It is apparent from the record that the court merely misspoke and was actually analyzing the provisions of paragraph 7 of the MDA.

rule, one of which is a "contractual or statutory provision [that] creates a right to recover attorney's fees." *Id.* Attorney's fees provisions are common in marital dissolution agreements. *See id.* at 474–75. In such cases, "at the trial court level . . . parties are contractually entitled to recover their reasonable attorney's fees when they have an agreement that provides the prevailing party in a litigation is entitled to such fees." *Id.* at 478 (citing *Seals v. Life Inv'rs Ins. Co. of Am.*, No. M2002-01753-COA-R3-CV, 2003 WL 23093844, at *4 (Tenn. Ct. App. Dec. 30, 2003); *Hosier v. Crye–Leike Commercial, Inc.*, No. M2000-01182-COA-R3-CV, 2001 WL 799740, at *6 (Tenn. Ct. App. July 17, 2001)). When a contractual term controls the award of attorney's fees, the trial court has no discretion in whether to award them to the prevailing party. *Id.* It may only determine whether the amount of attorney's fees is reasonable. *Id.*

To prove reasonableness of attorney's fees, at a minimum, the asserting party should produce an affidavit or testimony of the attorney's hourly rate and time spent. *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *11 (Tenn. Ct. App. Feb. 4, 2015); *Janoyan v. Janoyan*, No. E2013-01669-COA-R3-CV, 2015 WL 274618, at *5 (Tenn. Ct. App. Jan. 21, 2015). A trial court's finding of reasonableness of attorney's fees will stand unless the record contains evidence that the fees are unreasonable. *See Coleman*, 2015 WL 479830, at *11; *Janoyan*, 2015 WL 274618, at *5. So long as the court's award is reasonable, "the trial court need not have a 'fully developed record of the nature of the services rendered' before awarding attorney's fees." *Coleman*, 2015 WL 479830 at *11 (quoting *Kahn v. Kahn*, 756 S.W.2d 685, 696 (Tenn. 1988)).

Paragraph 23 of the parties' MDA states:

> In the event that it should be determined, . . . , that either party has willfully breached any provision of this Agreement, then the breaching party shall pay to the other party all reasonable attorneys' fees and costs incurred in the enforcement of any such provision or provisions as such are adjudged by the Court upon full hearing.

Seeking to enforce paragraph 7 of the MDA, Wife requested attorney's fees for her Petition for Scire Facias and Citation for Civil Contempt and for Attorney Fees, her response to Husband's Rule 52 Motion for Additional Findings of Fact and Conclusions of Law and/or Rule 59 Motion to Alter or Amend the Court's Order, and her response to Husband's appeal. Wife supported her attorney's fees incurred in the trial court with three affidavits from her counsel, Vickie Hardy Jones. Ms. Jones's affidavits included her hourly rate, the number of hours spent, and an itemized list of duties undertaken. In total, Wife incurred $12,412.68 in attorney's fees in the trial court proceedings. Husband asserts the trial court erred in awarding Wife attorney's fees below and requests that he be awarded attorney's fees on appeal.

Relying on Ms. Jones's affidavits, the trial court found Wife's fees to be reasonable

and necessary. The court relied on the factors listed in *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980) and Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5 to make its findings. The court stated the fees sought were customary in the Shelby County area for similar legal services; that the fees were for several months of services; and that Ms. Jones is a highly experienced and reputable attorney. Additionally, the court applied paragraph 23 of the MDA in stating, "The Court has no discretion whether to award attorney's fees when the parties in post-divorce proceedings have a valid and enforceable [MDA] which requires an award of attorney's fees to the prevailing party." (citing *Eberbach*, 535 S.W.3d at 478). This court finds no evidence in the record to disturb these conclusions.

Husband has failed to present evidence that tends to show Wife's attorney's fees are unnecessary or unreasonable. Husband asserts Wife has not met her burden of proof on this issue, but as stated above, the itemized affidavits of Ms. Jones are sufficient proof to support an award of attorney's fees. *See Kahn*, 756 S.W.2d at 696 (stating "a fully developed record of the nature of services rendered [is not] a prerequisite to an award of attorney's fees in a divorce case"); *Coleman*, 2015 WL 479830, at \*11; *Janoyan*, 2015 WL 274618, at \*5. Further, the "American Rule" on attorney's fees does not apply since paragraph 23 of the MDA is a contractual agreement to the contrary. *See Eberbach*, 535 S.W.3d at 474. Wife has succeeded in defending the MDA in both her initial petition and Husband's later motion. Husband did not "win" his Rule 52/Rule 59 motion simply because the court made additional findings. The trial court explicitly denied the motion and simply reiterated the findings it had already made.

On appeal, Wife is again successful in defending the MDA. Paragraph 23 controls the award of Wife's attorney's fees for defending this appeal. An attorney fee provision in an MDA is as applicable on appeal as it is in the trial court. *See id.* at 478 ("It necessarily follows that if an agreement is valid and enforceable, it must be enforced as written regardless of whether the parties are before a trial court or an appellate court.").

Therefore, we affirm Wife's award of attorney's fees for $12,412.68 incurred in the trial court. Wife is awarded additional attorney's fees for defending this appeal, the amount of which will be determined by the trial court on remand. Husband's request for attorney's fees on appeal is hereby denied.

## V.     CONCLUSION

For the reasons stated herein, the decision of the circuit court is affirmed and remanded for further proceedings. Costs of this appeal are taxed to appellant, Robert Elmo Cowan, Jr., for which execution may issue if necessary.

_s/ Carma Dennis McGee_
CARMA DENNIS MCGEE, JUDGE