# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs April 4, 2016

## TERRY SHAWN LEE v. SHANNON SNIDER LEE

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVDV10931   Ross H. Hicks, Judge**

_____

**No. M2014-01911-COA-R3-CV – Filed March 31, 2017**

_____

This case primarily concerns the interpretation of a legal separation agreement that was approved by the trial court as part of a decree of legal separation. After the husband failed to pay child and spousal support, the wife filed a petition for contempt and modification. The husband responded by, among other things, requesting a divorce. The trial court granted the parties a divorce, reformed the provisions of the legal separation agreement, awarded a judgment for child and spousal support arrearages, and held the husband in criminal contempt. On appeal, the husband argues that the trial court erred in its interpretation of the legal separation agreement; in awarding the wife a judgment for child and spousal support arrearages; in granting his request for a divorce; and in holding him in criminal contempt. We affirm in part, reverse in part, and remand this case for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and BRANDON O. GIBSON, JJ., joined.

Terry Shawn Lee, Garland, Texas, pro se appellant.

Andrew M. Cate, Brentwood, Tennessee, for the appellee, Shannon Snider Lee.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Terry Shawn Lee ("Husband") and Shannon Snider Lee ("Wife") legally separated on September 24, 2010, when the Circuit Court for Montgomery County, Tennessee entered a Final Decree of Separation. Their marriage produced three children, two sons and a daughter. By the time of the separation, their oldest child had already reached the age of majority, and he had graduated from high school.

The Final Decree of Separation approved and incorporated by reference a Legal Separation Agreement, which had been executed by the parties on September 9, 2010. The Agreement's purpose was "to make an equitable division of all their property which settles and determines all claims for alimony, which divides all property, both real and personal, owned by them or either of them, and which divides responsibility for all current indebtedness."

Under the Agreement, Husband and Wife would continue to share their residence until such time as it could be sold. While they lived in the home, the Agreement required Husband to pay for all utilities and the mortgage, but otherwise, the parties agreed that they would each assume responsibility for the payment of bills as they had before the separation.

The Agreement also obligated Husband to pay Wife child support and alimony, but only once the marital residence had been sold. The Agreement provided for specific, monthly child support in the amount of $1,278.00.[1] But, for support of Wife, the Agreement provided that Wife would receive the difference between 50% of Husband's income, not to exceed $3,000, and the child support payment. In other words, for child support and alimony combined, the Agreement required Husband to pay monthly the lesser of 50% of his income or $3,000. Additionally, the Agreement granted Wife 50% of any annual bonus Husband received until their middle child graduated from high school, at which point Wife would receive 30% of Husband's annual bonuses. Upon the youngest child's graduation, Husband's child support and alimony obligations ceased.

The court also entered an Agreed Permanent Parenting Plan Order to take effect once the parties moved into separate residences. The order designated Wife as the primary residential parent and granted her 265 days and Husband 100 days of parenting time. Consistent with the Legal Separation Agreement, the Agreed Permanent Parenting Plan Order provided that Husband would make a child support payment of $1,278.00 in

---

[1] A child support worksheet included as part of the Final Decree of Separation also calculated Husband's child support obligation as $1,278 per month.

semimonthly installments of $639. Husband was also required to maintain health insurance for the children.

Over two years after entry of the Final Decree of Separation, on December 31, 2012, Husband filed a pleading entitled "Amended Complaint for Legal Separation" in which he sought to amend his complaint for legal separation to a complaint for divorce. He also sought entry of a "new Marital Dissolution Agreement" based upon an alleged, unspecified "material change of circumstances."

Husband did not pursue his request for a divorce until several months later. On May 6, 2013, Wife filed a petition for contempt and modification of child support. In her petition, she alleged, among other things, that Husband had failed to make child or spousal support payments and failed to pay for the children's health insurance. Wife also alleged that Husband had "spent a total of five days with the parties' minor children in 2012." Wife filed a separate notice advising Husband that she was charging him with criminal contempt. Husband, acting pro se, responded to the petition and requested that the court "issues [sic] a divorce decree to replace the Legal separation agreement."

Pertinent to this case, Husband also claimed in his response that Wife had miscalculated the amount of child and spousal support due. In Husband's view, with the graduation of their middle child from high school, his combined obligation for child support and alimony should have been reduced to 30% of his income. As Husband complained, "[Wife] is still figuring everything on 50% and not 30%."

Following a hearing at which Wife and Husband were the sole witnesses, the trial court entered a Final Decree of Divorce. In its decree, the court stated that it was interpreting the Amended Complaint for Legal Separation as a request for a divorce and declared the parties divorced based on the fact that they had been separated longer than two years. The trial court also found Husband to be in criminal contempt due to his failure to pay court-ordered child and spousal support.

In calculating the child support and maintenance arrearage, the court recognized the dispute raised by Husband over how much of his income he was required to pay. In resolving the dispute, the court made the following conclusions of law:

5. There is disagreement about the language of Paragraph 10 of the Legal Separation Agreement which states

*CHILD SUPPORT AND MAINTENANCE: Until the marital residence is sold the parties will continue to share the residence together. Husband will be responsible for the mortgage payment, utilities, and the couple will continue to divide the bills in the same manner as before the separation. When the marital residence is sold, the Wife will receive one-half of the*

3

*Husband's net income not to exceed $3,000.00 monthly until youngest child graduates from high school. These monies are a compilation of child support and maintenance. Child support is currently calculated at $1278.00 (One thousand two hundred seventy eight dollars) monthly. If Husband receives a yearly bonus he will provide 50% (fifty percent) to Wife by January 15th of the following year until [their middle child] graduates from high school; and then 30% (thirty percent) until [their youngest child] graduates high school. At which time all disbursements will cease.*

6. The Court interprets this paragraph as only the bonuses are reduced to 30%, however, the Court is allowing the reduction to 30% of both the support and the bonuses after the child support is paid to Mrs. Lee. Net income is defined as the gross income minus the taxes only, and Mr. Lee shall not deduct other items which are not allowed when calculating his payments.

In making this conclusion, the court relied upon testimony of Wife in which she seemingly acknowledged that Husband's obligation to pay child support and alimony would reduce to 30% of all his income, not just bonuses, upon their middle child's graduation from high school.

On appeal, Husband raises several issues with the Final Decree of Divorce. For her part, Wife submits that the trial court erred in the calculation of the child support and alimony arrearages. Wife also seeks an award of her attorney's fees on appeal.

## II. ANALYSIS

Before reaching the substantive issues raised by the parties, we must first address the state of Husband's brief. Wife submits that Husband, who is representing himself in this appeal, failed to comply with Rule 27 of the Tennessee Rules of Appellate Procedure,[2] which sets forth the requirements of briefs. Wife, therefore, requests that Husband's appeal be dismissed.

---

[2] Among other things, Tennessee Rule of Appellate Procedure 27(a) requires that an appellant's brief contain the following:

(4) A statement of the issues presented for review;

. . . .

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth:

4

## A. Sufficiency of Husband's Brief

"It is well-settled that *pro se* litigants must comply with the same standards to which lawyers must adhere." *Watson v. City of Jackson*, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014). As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003) (internal citations omitted). We keep these principles in mind in considering this appeal and, specifically, Husband's brief.

Husband's brief does contain some of the components required by our rules. The brief includes a table of contents, a statement of issues, a statement of the case, a statement of facts, an argument, and a conclusion. However, the issues referenced in the table of contents and the issues presented for review vary. More problematic is Husband's argument. He has not put forth arguments as much as he has listed authority and included documents from below. Wife has also correctly pointed out that many of the documents included in Husband's brief were not included in the record on appeal. Consequently, we are unable to consider them. *See* Tenn. R. App. P. 13(c), 28.

While Husband's brief is inadequate in many ways, we are able to grasp the basics of his arguments. To some extent, Wife's issues on appeal overlap with those of Husband as we discern them. Therefore, we exercise our discretion to consider the merits

---

> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
>
> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)[.]

Tenn. R. App. P. 27(a).

5

of Husband's appeal despite the deficiencies in his appellate brief. *See* Tenn. R. App. P. 2 (allowing this Court to suspend the requirements of the Tennessee Rules of Appellate Procedure "[f]or good cause").

We recast Husband's issues as follows: (1) whether the trial court properly interpreted the Legal Separation Agreement; (2) whether the trial court erred in awarding Wife an arrearage for child and spousal support; (3) whether the trial court erred in granting the parties a divorce; and (4) whether the trial court erred in finding him in criminal, rather than civil, contempt.

### B. INTERPRETATION OF THE LEGAL SEPARATION AGREEMENT

A decree of legal separation, like a decree of divorce, may include provisions for "the suitable support and maintenance of the children by either spouse" and for "alimony to be paid by one spouse to or for the benefit of the other." Tenn. Code Ann. §§ 36-5-101(a)(1), -121(a) (Supp. 2016 & 2014). In anticipation of a divorce or legal separation, spouses often enter into agreements addressing such matters as division of property and support. *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975). Marital dissolution agreements and separation agreements are essentially contracts. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Altman v. Altman*, 181 S.W.3d 676, 680 (Tenn. Ct. App. 2005); *Matthews v. Matthews*, 148 S.W.2d 3, 11 (Tenn. Ct. App. 1940). But once an agreement is approved by the trial judge, "it loses its contractual nature" and becomes the judgment of a court.[3] *Blackburn*, 526 S.W.2d at 465-66; *see also Kensinger v. Conlee*, No. 02A01-9811-CV-00322, 141706, 1999 WL 553713, at *4, (Tenn. Ct. App. 1999); *Simpson v. Simpson*, No. 88-185-II, 1989 WL 3170, at *2 (Tenn. Ct. App. 1989). Nevertheless, "on matters outside the scope of the legal duty of child support during minority" or alimony over which the court has the authority to modify, agreements retain their "contractual nature" and are "enforceable in the same manner as other contracts." *Blackburn*, 526 S.W.2d at 465 (citing *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975)); *Kensinger*, 1999 WL 553713, at *4.

Courts construe and enforce marital dissolution and legal separation agreements like contracts. *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001); *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993); *Pylant v. Spivey*, 174 S.W.3d 143, 151 (Tenn. Ct. App. 2003). Our goal is to ascertain and give effect to the contracting parties' intentions. *Ahern v. Ahern*, 15 S.W.3d 73, 81 (Tenn. 2000). To achieve this goal, we focus on the language of the agreement. *Elliott v. Elliott*, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004).

---

[3] Such agreements, once approved by the court, are considered to have lost their "contractual nature" or to have merged into the judgment of the court because of a court's statutory authority to modify child support or alimony, other than alimony in solido. *See* Tenn. Code Ann. §§ 36-5-101(g), -121(e)(2), (f)(2)(A), (g)(2), (h)(2). Without such a conceit, a court would violate the State Constitution's prohibition against impairment of contractual obligations with any subsequent modification of the agreed amount of support or alimony. *Blackburn*, 526 S.W.2d at 465 (citing Tenn. Const. art I, § 20).

Because "the interpretation of a contract is a matter of law, our review is *de novo* on the record with no presumption of correctness in the trial court's conclusions of law." *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003) (citations omitted).

As noted above, the Legal Separation Agreement between Husband and Wife limited Husband's responsibility for the payment of child and spousal support to a percentage of his net income or $3,000, whichever was the lesser. At trial, the parties agreed that the percentage was to be 50% at least initially. Husband contended that the percentage of his net income devoted to child and spousal support was to decline to 30% upon the middle child's graduation from high school. Wife argued that the 30% decline only applied to Husband's bonuses.

The trial court adopted Husband's interpretation despite misgivings that such an interpretation was not supported by the language of the Agreement. Based on its reference to testimony of Wife,[4] we assume that the court reformed the Agreement on the basis of a mutual mistake. To be sure, when parties to a written contract "operat[e] under a mutual mistake of fact or law regarding a basic assumption underlying the bargain," a court may alter the terms of the written contract. *Sikora v. Vanderploeg*, 212 S.W.3d 277, 286 (Tenn. Ct. App. 2006). However, "[b]ecause the law strongly favors the

---

[4] The testimony relied upon by the trial court came in during cross-examination of Wife by Husband's attorney. The following exchanged occurred:

Q. Your son graduated in 2012, and the document has a trigger of a 50% percent [sic] downward to a 30% percent [sic] condition on that event, is that correct?

THE COURT: On the bonus.

[Husband's attorney]: On the bonus.

[Wife]: What was the question?

BY [Husband's attorney]:

Q. The legal separation agreement states that the 50% percent will decrease to 30% percent [sic] on the bonus.

A. Yes.

Q. Is that your understanding, or is it your understanding that the 50% percent [sic] would decrease to 30% percent [sic] on everything?

A. The bonus and the pay. They're separate. Yes, 30% of the bonus, 30% percent [sic] of his income.

7

validity of written instruments," a person seeking to reform a written contract based on mistake must present clear and convincing evidence of the mistake. *Id.* at 287.

We conclude that the evidence is less than clear and convincing that there was a mutual mistake. Although Wife did testify on cross-examination that she was to receive 30% of Husband's net income as well as 30% of bonuses, she contradicted that position moments before. In our view, this likely indicated confusion on her part as to the question posed by Husband's attorney. Later, on re-direct, Wife clarified her testimony to reflect her belief that she was entitled to one-half of Husband's net income. In light of Wife's testimony and there being no other evidence to support a finding of mistake other than the testimony of Husband, the trial court erred in reforming the language of the Agreement.

Our task, therefore, is look to "the ordinary meaning of the language contained within the four corners of the contract." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011). The Agreement of the parties provides in pertinent part as follows: "the Wife will receive one-half of the Husband's net income not to exceed $3,000.00 monthly until youngest child graduates from high school. These monies are a compilation of child support and maintenance." The provision clearly and unambiguously states that Wife will receive half of Husband's net income, which will constitute both child support and spousal support, up to $3,000.00. There is no provision for the percentage of Husband's net income devoted to child and spousal support to change. The only qualification other than the $3,000 cap is that the obligation will cease when the parties' youngest child graduates from high school.

### C. AWARD OF CHILD AND SPOUSAL SUPPORT ARREARAGES

Our conclusion that the trial court erred in its interpretation of the Legal Separation Agreement requires a recalculation of the spousal support arrearages. However, both parties raise additional issues relative to the arrearage award. We address the issues raised by Wife first.

Beyond applying an incorrect percentage, 30% versus 50%, of net income to determine Husband's combined liability for child and spousal support, Wife argues that the court performed the calculation of Husband's spousal support obligation incorrectly. The court showed its calculations of past due child and spousal support in exhibits appended to its Final Decree of Divorce. To calculate support payments, the court subtracted from Husband's net monthly income the amount of the agreed child support payment, $1,278.00, and then multiplied the difference by 30%. We agree with Wife that the equation used by the court did not comport with the terms of the Legal Separation Agreement.

For calculation of spousal support, the parties' Agreement required the court to multiply Husband's net monthly income by 50%. If the product was less than $3,000, the parties were then required to subtract from the product the monthly child support payment of $1,278.00. If the difference was a positive number, the difference was the support payment for that month. If the difference was a negative number, Husband owed Wife no support for that month. If the product of Husband's net monthly income multiplied by 50% was equal to or greater than $3,000, Husband's support payment for that month was $1,722.00.

Wife also argues that the court used incorrect starting and ending dates for its calculation of the child support obligation arrearage. We again agree. Under the terms of their Agreement, Husband's child and spousal support obligations would commence after the marital residence was sold. Until that time, Husband and Wife intended to live together and pay expenses as they had before the separation. As the proof showed, the marital residence sold in November 2011. Based on this evidence, the calculation of the child support arrearage should have commenced with the month of November 2011, rather than October 2010, as reflected in the Final Decree of Divorce.

As for the end date, the effective date of the trial court's modification of Husband's child support obligation established the end date for the arrearage. The court used inconsistent dates for the effective date of its modification. Paragraph 8 of the Final Decree of Divorce states that "[t]he effective date for modification of child support is February, 2014, the date of the filing of the request by [Husband]." But in paragraph 10, the Decree provides that the new monthly child support payment of $992.00 shall commence on June 1, 2014. Commencement date of the modified child support amount impacts, not only the months included in the arrearage, but also the calculation of Husband's spousal support obligation. As such, on remand, the court must clarify when it intends for the child support modification to be effective.

Finally, Wife argues that, in calculating the amount of the spousal support arrearage, the court failed to award her a percentage of bonuses Husband had earned. Specifically, Wife states that "[t]he trial court included an incomplete list of Husband's bonuses in the worksheet used to calculate Husband's alimony (maintenance), but did not include any portion of Husband's bonuses in calculating the amount of Husband's support arrearage."

Our review of the exhibits appended to the Final Decree of Divorce supports Wife's argument that the court included none of Husband's bonuses in its calculation of the spousal support arrearage. Bonus amounts are listed for various months, but the exhibits do not indicate any amount of the bonuses to be included in the spousal support obligation. In addition, the exhibits do not list all the bonuses Wife claims Husband received. On remand, the trial court must make findings of fact concerning Husband's bonuses and whether they should be included in the spousal support arrearage. The court

9

should also indicate whether Wife is entitled to 50% or 30% of the bonus based on the graduation of the parties' middle child from high school.

For his part, Husband argues that he should have been relieved from a portion of the child support arrearage award due to his unemployment. The proof showed that, after his legal separation from Wife, Husband was unemployed for approximately 15 months and did not begin working again until June 2012.

A child support order is a judgment and is enforceable in the same manner as any other judgment issued by a court of law. *See* Tenn. Code Ann. § 36-5-101(f)(1). And State statute[5] restricts a court's authority to retroactively modify a valid child support order. *See id.*; *Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991). Once child support payments become due, they cannot be altered, reduced, or forgiven by the courts of this state. *Rutledge*, 802 S.W.2d at 607; *see also Alexander v. Alexander*, 34 S.W.3d 456, 460 (Tenn. Ct. App. 2000); *Netherton v. Netherton*, No. 01-A-01-9208-PB00323, 1993 WL 49556, at *2 (Tenn. Ct. App. Feb. 26, 1993); *Johnson v. Johnson*, No. E2003-00130-COA-R3-CV, 2003 WL 22258180, at *3 (Tenn. Ct. App. Sept. 29, 2003).

What Husband requested at trial, therefore, the court simply lacked authority to grant. Any award of less than the full amount of the child support arrearage would have amounted to a retroactive modification of a valid child support order. *See Brown v. Heggie*, 876 S.W.2d 98, 101 (Tenn. Ct. App. 1993); *Buettner v. Buettner*, 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005); *State ex rel. Whitley v. Lewis*, 244 S.W.3d 824, 829-30 (Tenn. Ct. App. 2007); *State ex rel. Estes v. Estes*, No. E2011-01067-COA-R3-CV, 2012 WL 826595, at *4-5 (Tenn. Ct. App. Mar. 13, 2012).

Husband also argues that the trial court erred in its determination of what constituted "net income" for purposes of the Legal Separation Agreement. Specifically, Husband submits that the court erred in including as income employer allowances or

---

[5] Tennessee Code Annotated § 36-5-101(f)(1) provides as follows:

> Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. . . . [S]uch judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed . . . . If the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears, shall become a judgment for the unpaid amounts, and shall accrue interest from the date of the arrearage at the rate of twelve percent (12%) per year. All interest that accumulates on arrearages shall be considered child support.

Tenn. Code Ann. § 36-5-101(f)(1).

reimbursements for business expenses.[6]  According to his testimony, Husband used his cellular telephone reimbursement for expenses associated with his work.

Such allowances or reimbursements, which are sometimes referred to as fringe benefits, may be includable as income.  Whether to include them turns on whether the recipient receives some personal benefit from the payments.  For example, in *Wiser v. Wiser*, 339 S.W.3d 1 (Tenn. Ct. App. 2010), this Court was presented with the question of whether fringe benefits are includable as income for purposes of determining spousal support.  In resolving the issue, we stated:

> Husband argued as well that fringe benefits such as a vehicle and child care should not be considered in determining his income because the vehicle was used for business as well as for personal transportation, and the child care was necessitated by his frequent business travel.  No doubt this is true, and there is ample justification for Wiser Company to be able to claim Husband's vehicle and his child care as legitimate business expenses.  This fact does not preclude these items from being considered part of Husband's income, along with any other fringe benefits.  *See, e.g.*, *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005) (holding that it was error for trial court not to consider company vehicle as part of obligor's income for purposes of calculating child support).

*Wiser*, 339 S.W.3d 1, 13-14 (Tenn. Ct. App. 2010).  Similarly, the Tennessee Child Support Guidelines provide that fringe benefits can be included as income for the purposes of child support "if they reduce personal living expenses."  Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)4 (2017).

Here, Husband only offered testimony concerning his cellular telephone reimbursement.  His testimony that the reimbursement only covered required expenses for his work went unrefuted.  Consequently, we conclude that the trial court erred in including Husband's cellular telephone reimbursement as part of his "net income."  However, Husband offered no proof concerning any other allowances or reimbursements, so we conclude that the court did not err in including the other amounts in Husband's net income.

D. Granting of the Divorce

The court entered a Final Decree of Divorce.  But, at the commencement of the hearing, Husband's attorney stated "Your Honor, this case was premised on a contempt petition that was filed by the wife in this case . . . ."  And, when asked to call his first

---

[6] These items appear on Husband's earnings statements or payroll stubs under the descriptions "Auto Allowance," "Gas Allowance," and "Cell Phone Reimb."

11

witness, Husband's attorney replied, "It's the third motion for contempt and my countermotion for provocation." Husband argues that that the trial court erred in converting the hearing on Wife's motion for contempt to a hearing on all pending matters, including his request for a divorce.

Under Rule 36(a) of the Tennessee Rules of Appellate Procedure, relief need not "be granted to a party responsible for an error or who failed to take whatever action is reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36. The Advisory Commission Comments to Rule 36(a) provide that "[t]he last sentence of this rule is a statement of the accepted principle that a party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error." Tenn. R. App. P. 36(a) cmt. Furthermore, our Supreme Court has stated, "Generally, a party to a lawsuit cannot complain of an error if he created the situation." *Waters v. Coker*, 229 S.W.3d 682, 689-90 (Tenn. 2007) (citing *Waterhouse v. Perry*, 260 S.W.2d 176, 178 (Tenn. 1953)).

Husband created the situation of which he now complains. Although the hearing might have begun addressing only the issue of contempt, the parties, through counsel, consented to the court also taking up the matter of the divorce. The court explained this to the parties in open court:

> In this matter I want both parties to understand, and I think you do from your conversations with your attorneys, that during the break that we took at approximately 10:30, I called them back into chambers and suggested to them that I read the pleadings that had been filed in this matter previous to the involvement of either [Husband's attorney] or [Wife's attorney]. Pleadings that had been filed on behalf of [Husband] by his then-attorney, and specifically the pleading that was described as an amendment to the Complaint for Legal Separation.
>
> I read the document to be a request that, among other things, the Complaint for Legal Separation be amended to a Complaint for Divorce. And that there was a -- I read that request for general relief to encompass -- to give the Court the ability to grant a divorce in this case today, and I wanted that to be discussed with both of you. And based on the comments that were made when I reentered the room, I assume that that is your understanding of what I am going to do today. I did that because this case has been going on since 2010. There was a final decree of legal separation entered on September 24th of 2010, and the parties have been operating pursuant to that some time.

The transcript reflects no objection being raised by Husband. In fact, Husband's testimony indicates that he was fully aware that the proceeding encompassed the granting

of a divorce. When asked by his counsel if he would like the court to grant him a divorce on the day of the hearing, Husband responded, "Absolutely."

## E. FINDING OF CRIMINAL CONTEMPT

The last issue raised by Husband is that the trial court erred in holding him in criminal, rather than civil contempt. Under Tennessee Code Annotated § 29-9-102(3) (2012), courts have the power to "issue attachments, and inflict punishments for contempts of court" for "[t]he willful disobedience or resistance of any officer of such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." A finding of contempt may be either civil or criminal in nature. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 473 (Tenn. 2003). Civil contempt is intended to benefit a private party who has suffered a violation of rights, and "the quantum of proof necessary to convict is a preponderance of the evidence." *Id.* at 473-74. But criminal contempt, which is at issue here, "is punishment for failing to comply with an order." *Sherrod v. Wix*, 849 S.W.2d 780, 786 n.4 (Tenn. Ct. App. 1992) (citations omitted).

"In criminal contempt proceedings, the defendant is presumed to be innocent and must be proven guilty beyond a reasonable doubt." *Doe*, 104 S.W.3d at 474. To find either civil or criminal contempt, "a court must find the misbehavior, disobedience, resistance, or interference to be wilful." *Ahern*, 15 S.W.3d at 79; *see also Furlong v. Furlong*, 370 S.W.3d 329, 336-37 (Tenn. Ct. App. 2011) (finding willfulness to be an element of criminal contempt based upon alleged disobedience of a court order). In the context of criminal contempt, willfulness has two elements: (1) intentional conduct; and (2) a culpable state of mind. *See State v. Beeler*, 387 S.W.3d 511, 523 (Tenn. 2012); *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 357 (Tenn. 2008).

Once convicted of criminal contempt, a person loses his presumption of innocence. *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). On appeal, the person convicted "bear[s] the burden of overcoming their presumption of guilt on appeal." *Id.* We reverse a contempt finding "if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

The trial court held Husband in criminal contempt and sentenced him to ten days in the Montgomery County Jail.[7] The only finding made by the court relative to the criminal contempt was that Husband "did not pay his court ordered child support or

---

[7] The court stayed the sentence "with credit for one (1) day of service pending [Husband's] faithful payment of all sums due each month to [Wife]."

maintenance as ordered." The court made no finding that Husband's violation was willful.

On appeal, Wife argues that the finding of criminal contempt was appropriate in light of Husband's outburst in open court.[8] We disagree. Although we do not excuse or condone Husband's outburst, the court's order is clear that the criminal contempt is based upon violations of the Final Decree of Separation, which approved and incorporated by reference the Legal Separation Agreement. Had the court intended to punish Husband summarily for his outburst, an act potentially constituting a direct contempt, the court would have had to comply with Tennessee Rule of Criminal Procedure 42(a).[9] *Daniels v. Grimac*, 342 S.W.3d 511, 517 (Tenn. Ct. App. 2010). The record does contain an order complying with Rule 42(a), so we must determine whether punishment for failure to comply with the Final Decree of Separation was appropriate.

We conclude that it was not. Based on our review of the record, the evidence does not support a finding that Husband acted "willfully" as that term is defined in the context of criminal contempt. During the period of his unemployment, Husband's failure to pay

---

[8] The following exchange occurred between the court and Husband regarding the requirements of the Legal Separation Agreement:

> THE COURT: No. His maintenance is 30% percent on top of his child support obligation, up to a total of $3,000 thousand dollars. That's exactly what the document says.
>
> [Husband]: No, no it doesn't.
>
> THE COURT: Yes, sir, it is what it says.
>
> [Husband]: I'm telling you right now, I'm done. Cuff me.
>
> THE COURT: You want me to cuff you? I mean, I'll be happy to accommodate you, sir. I don't think that's a very wise choice on your part.
>
> [Husband]: I am not going to be a slave to her and not be able to live my life. I'm not going to do that. My retirement will be in jail.
>
> THE COURT: All right, then you can take him into custody and you'll be released when you change your mind, sir.
>
> [Husband]: My mind won't be changed.

[9] The rule provides as follows: "A judge may summarily punish a person who commits criminal contempt in the judge's presence if the judge certifies that he or she saw or heard the conduct constituting the contempt. The contempt order shall recite the facts, be signed by the judge, and entered in the record." Tenn. R. Crim. P. 42.

14

support was not willful. But, even after he regained employment, the proof failed to show that Husband possessed a "culpable state of mind." If anything, the testimony revealed that Husband misunderstood the child and spousal support requirements of the Legal Separation Agreement.

## F. REQUEST FOR ATTORNEY FEES

Finally, Wife requests an award of her attorney fees on appeal. By statute, courts have discretion to award a spouse designated as the primary residential parent "reasonable attorney fees incurred in enforcing any decree for alimony and/or child support." Tenn. Code Ann. § 36-5-103(c) (2014). This discretion extends to appellate courts and attorney fees incurred on appeal. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). In exercising our discretion, we "consider, among other factors, the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004).

Considering the factors, we award Wife her attorney fees incurred on appeal. We remand this case to the trial court for a determination of the proper amount of attorney fees to be awarded to Wife.

## III. CONCLUSION

We affirm the trial court's decision to grant the parties a divorce. We reverse the finding of contempt and the award of child and spousal support arrearages. This cause is remanded for a redetermination of the arrearages, for an award to Wife of attorney fees incurred on appeal, and for any further proceedings, consistent with this decision, that may be necessary.

_____
W. NEAL MCBRAYER, JUDGE

15